**UNITED STATES of America, Appellant,**

v.

**Frank WOLFE, Appellee.**

**No. 544, Docket 71–1835.**

United States Court of Appeals, Second Circuit.

Argued Feb. 24, 1972.

Decided March 20, 1972.

Certiorari Denied June 26, 1972. See 92 S.Ct. 2491.

Edward R. Korman, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., David G. Trager, Asst. U. S. Atty., of counsel), for appellant.

Richard I. Rosenkranz, Brooklyn, N. Y., for appellee.

Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.

PER CURIAM:

This is an appeal from an order of the United States District Court for the Eastern District of New York, John F. Dooling, Jr., *Judge*, granting the motion

of the appellee Frank Wolfe to suppress keys taken from him upon his arrest. We reverse.

The defendant Frank Wolfe was the proprietor of a gasoline station in Brooklyn known as the Four Star Service Station. On October 13, 1970, the Federal Bureau of Investigation was advised that a large quantity of Canadian Club liquor had been hijacked. On October 14, 1970 a special agent of the F.B.I., who headed the hijacking squad, received a phone call at home from an informant, who had previously given reliable information, advising that a member of the group which had hijacked the liquor had told the informant that the stolen Canadian Club liquor was stored in two U–Haul trucks at the Four Star Service Station. This special agent also had been advised by another agent of his squad that a reliable informant had indicated that the Four Star Service Station was being used as a drop for stolen merchandise. A surveillance of the station on October 14 disclosed that two U–Haul trucks were parked there. Four Star was a franchised Ryder Truck Rental Agency. On October 15, 1970 the F.B.I. procured a search warrant to search the vehicles. The surveillance continued until the afternoon of October 16, 1970, and during all of this time no other U–Haul trucks were seen to enter or leave the Four Star premises. At about 1:15 p. m. on October 16, 1970 an entourage of three vehicles was seen to leave the garage—a brown Buick, followed by one U–Haul truck, followed by a green Cadillac—personally directed out by Wolfe. After driving a few blocks in procession, followed by three unmarked F.B.I. cars, the operator of the brown Buick was seen to make a rapid set of gestures to the following truck. The Cadillac picked up speed and passed the truck and the Buick. The F.B.I. intercepted the three and arrested the occupants. All vehicles and drivers were escorted back to the garage. At that point, Wolfe was arrested. Plainly visible, hanging from his belt was a set of keys. The keys were taken from him by an agent and were used to open the two U–Hauls, which contained the stolen Canadian Club liquor, as well as a Ryder truck which contained stolen stereo equipment.

The District Court, although expressing misgivings concerning the validity of the October 15th search warrant for the vehicles, did find that the search of the vehicles on October 16th was lawful in view of the behavior of the caravan on that afternoon which corroborated and reinforced the initial information of the informants. The District Court therefore denied the motion to suppress the contents of the U–Haul trucks, but did grant Wolfe's motion to suppress the keys, finding no probable cause for his arrest and the incidental search. It is not disputed that if the arrest was lawful, the personal search which resulted in the seizure of the keys, was proper. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

■■ The facts are not in controversy, and there is no issue of credibility of the witnesses. The court below characterized Wolfe's conduct in directing the three car procession out of the garage as "totally unsuspicious" and his only connection with the crime. We find this to be error. This fact cannot be viewed in isolation; the evidence must be viewed in its totality, United States v. Manning, 448 F.2d 992, 998–999 (2d Cir. 1971) (en banc). Looking at the totality of the evidence, the agents did have probable cause to arrest Wolfe and take the keys which were hanging from his belt in plain view. One previously reliable informant had advised the F.B.I. that the stolen Canadian Club was to be found in the two U–Haul trucks at the garage; the two vehicles matching the description were observed there and none others were observed there during the surveillance. Another previously reliable informant had described the premises generally as a "drop" for stolen goods. The caravan (Buick-truck-Cadillac), which Wolfe directed out of the garage, would not seem to be the normal procession of routine business. The

subsequent scattering on signal was clearly suspicious and justified the search of the vehicles. This maneuver corroborated the information that the garage was a "drop". Under the circumstances here we cannot sensibly separate the character of the situs from that of its proprietor. It is not reasonable to assume that two truckloads of high price, high proof liquor would be entrusted to the casual custodianship of a public garage on a busy street in Brooklyn for several days without the assurance of some degree of cooperation and knowledge on the part of the proprietor. The only alternative left to the agents was to smash open the truck if they could not use the keys. Here the agents proceeded sensibly; they had obtained a search warrant and there was no indication of threats, force or violence on their part.

Reversed.