**UNITED STATES of America**

v.

**Stanley SIMPSON et al., Defendants.**

**No. 75 Cr. 436.**

United States District Court,
S. D. New York.

July 1, 1975.

———◆———

Paul J. Curran, U.S. Atty., S.D.N.Y., New York City, for the United States; John P. Flannery, II, Asst. U.S. Atty., of counsel.

Turchin & Topper, New York City, for defendant Simpson; Morton J. Turchin, New York City, of counsel.

Allen S. Stim, New York City, for defendant Bryant.

Elliot A. Taikeff, New York City, for defendant Best.

OPINION

IRVING BEN COOPER, District Judge.

These are motions to suppress evidence made by defendants Simpson, Bryant and Best, pursuant to Fed.R. Crim.P. 41; in addition, Simpson moves for a hearing with respect thereto. Defendants are charged in a two-count indictment with conspiracy and with an attempt to rob a federally insured bank, in violation of 18 U.S.C. §§ 2113(a), 371 and 2.

Defendants seek to suppress three items: (1) a "practice" grenade found on defendant Bryant as a result of a pat-down search; (2) a note demanding bank funds dropped by defendant Best;

and (3) a statement made by Best[1] after he had been advised of his *Miranda*[2] rights.

The motions are denied in all respects.

On April 24, 1975 defendants Bryant and Best were observed by several members of the New York City Police Department's Anti-Crime Unit on routine duty. At about 1:30 P.M., police Sergeant William Henry, police officer John Reddy and another police officer were sitting in an unmarked taxi at 20th Street and Fifth Avenue in New York City. From this vantage point, they noted the movements of each defendant which alerted them and gave rise to their suspicions. Henry and Reddy observed defendants Best and Bryant cross from the east side to the west side of Fifth Avenue at 20th Street. On the northwest corner of that intersection was a branch office of the Chemical Bank. Best and Bryant walked a short distance past the bank's entrance on 20th Street where they stopped momentarily. After a short interval, they returned to the bank's 20th Street entrance and Bryant entered.

Best meanwhile retraced his steps, re-crossing Fifth Avenue and continued halfway down the block on the north side of 20th Street. There defendant Simpson sat in a 1972 bronze-colored Pontiac. Best talked briefly with Simpson and then crossed over toward the south side of 20th Street, ostensibly to get a better view of the bank's Fifth Avenue exit. Almost simultaneously, Bryant, who had been on a "feeder" line in the bank, left it by its Fifth Avenue exit. After giving Bryant a hand signal, Best returned to Simpson in the car. He had a second conversation with Simpson, and then joined Bryant. The two walked north on Fifth Avenue.

As they were going north, Best and Bryant stopped, and for several minutes looked in the window of a branch office of the Chase Manhattan bank located at 200 Fifth Avenue. Neither entered the bank where two armed guards were viewable from the outside; instead they changed their course, heading south on Fifth Avenue, passing both Henry and Reddy.

Although it was a warm day, Bryant wore a three-quarter length top coat and kept it buttoned. Moreover, he held his left arm very stiffly in his coat pocket. Officer Reddy said it looked "like he had a shot gun under his coat." Best wore a windbreaker.

When Bryant and Best reached a branch office of the Manufacturer's Hanover Trust Co. at 130 Fifth Avenue near 18th Street, they entered by the Fifth Avenue entrance. They were observed by Henry and Reddy and a third police officer named Ricciardi. Best got on a feeder line for the teller stations and Bryant engaged the bank guard in conversation. At approximately this time defendant Simpson drove the Pontiac one block south to 19th Street and parked there.

Bryant's back was toward Henry and Reddy as they both looked through the bank's floor-to-ceiling windows. Bryant had his right arm around the bank guard's waist and he continued to maintain his left arm stiffly in his left pocket. It appeared to both Henry and Reddy that Bryant was holding a gun on the bank guard with his left hand, even as he held the guard's waist with his right. After a few moments, Bryant walked with the bank guard towards the rear of the bank. Best was by then at the head of the feeder line at the teller station.

Concerned for the safety of the bank guard, Reddy entered the bank by its Fifth Avenue entrance. As he did, first Best, then Bryant, spontaneously rushed to the bank's side exit fronting 18th Street. Thereupon Reddy exited the bank onto Fifth Avenue. Henry almost bumped into Best as the latter came out of the 18th Street exit. Upon confront-

---

1. See *infra*, at p. 1398.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ing Best, Henry said, "I'm a police officer, don't move." Henry then patted Best down. Henry felt nothing like a weapon and searched no further.

Simultaneously, Reddy came around the corner to 18th Street with officer Ricciardi. Henry told them to stop Bryant who was coming out of the bank's 18th Street exit. They immediately stopped Bryant, still with his left arm held stiffly and his left hand in his coat pocket. Reddy ordered Bryant not to move or move his hands, and asked, "what were you doing in the bank?" Bryant did not answer. Reddy then asked whether Bryant had any weapons on him. Bryant said he had none. Reddy then patted Bryant and without going beyond the surface of Bryant's clothing, felt what he could immediately identify as a grenade.[3] Reddy then reached into Bryant's left coat pocket and pulled out a grenade. It was only then that Reddy discovered that the grenade was not a "live" one.

Instantly, Reddy and Ricciardi informed Henry of the grenade found on Bryant. They then escorted Bryant to a position slightly west of the bank's 18th Street exit. Informed of this new development, Henry directed Best to the same spot. As Best was walking to join the others, Henry noticed that he put his right hand in his windbreaker pocket and casually tried to pull out an envelope concealed within his pocket. He let the envelope slip from his pocket to the ground. Henry picked it up. On the outside of the envelope there was typewritten: FREEZE: KEEP HANDS IN VIEW: DON'T TRY ANYTHING OR YOU WILL DIE: I HAVE A BOMB: PUT ALL MONEY ON TOP BIG BILLS FRIST [SIC]: NOW, WHEN YOU FINISH AND I GO WAIT FIFHTEEN [SIC] MINTUES [SIC] BEFORE YOU DO ANYTHING. YOU WILL BE WATCHED.

As they stood just west of the bank's 18th Street exit, Best and Bryant were told they were under arrest. They were advised of their constitutional rights by Reddy. Simpson also was placed under arrest. Shortly thereafter, Best made an inculpatory statement to the effect that he and Bryant were going to rob the Manufacturer's Hanover bank on 18th Street and that Simpson would drive their getaway car.

## I DISCUSSION

■■ At the outset it should be noted that Simpson was not present at the time of the contested search and seizures. He does not allege any proprietary or possessory interest in the seized items. Accordingly, we hold that Simpson has no standing to urge suppression. *Brown v. United States*, 411 U.S. 223, 229, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). On that ground alone we could deny his application for a hearing. A more fundamental reason impels us to deny a hearing. It is well settled that unsupported speculation with no specific allegations of prejudice in a moving affidavit by defendant or his counsel is totally insufficient to justify a hearing. *United States v. Gardner*, 308 F.Supp. 425, 427 n.1 (S.D.N.Y.1969); *United States v. Pardo-Bolland*, 229 F.Supp. 473, 475 (S.D.N.Y.1964), *aff'd*, 348 F.2d 316 (2d Cir. 1965). Here, defense counsel completely fail to submit any evidence based on personal knowledge supportive of their conclusory statements.[4] See, *United States v. Culotta*, 413 F.2d 1343 (2d Cir. 1970). Accordingly, we deny a hearing.

■ The motion to suppress the dummy hand grenade found on Bryant after the pat-down search is also denied. See *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868,

---

3. While in the U.S. Air Force from 1955 to 1959, Reddy became familiar with and used grenades.

4. We feel compelled to note that only Best's counsel has seen fit to provide us with any legal authority (and that consisting of two-thirds of a page). See Local Rule 9(b).

20 L.Ed.2d 889 (1968). The central principle enunciated in *Terry* is that a police officer who has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether at that moment he has probable cause for an arrest, may make a reasonable search for weapons even though he is not certain that the individual is armed; the validity of such a search depends upon the specific, reasonable inferences the officer is entitled to draw from the facts in light of his experience. *Id.* at 27, 88 S.Ct. 1868. Applying that principle here, we hold that the search conducted upon Bryant was reasonable and consequently the grenade admissible.

The behavior of each of these defendants as observed by the two officers, with a combined experience of more than 26 years, especially the movements to three separate banks within a strikingly short period of time, clearly indicated that two defendants were "casing" the banks while Simpson, nearby, was ready to drive the getaway car. Further, Bryant was wearing a long top coat on a warm day and it appeared that he was concealing a weapon under his coat. At the Manufacturer's Hanover bank especially Bryant seemed to hold a weapon against the bank guard forcing him to the rear of the bank. And finally, when Reddy entered the last bank, both Bryant and Best started for the exit.

In view of the totality of the suspicious circumstances as observed by the surveilling officers of long experience, it was reasonable for them to conduct a pat-down search of Bryant. The grenade is admissible.

Defendants further urge that the "demand" note dropped by Best and his later inculpatory statement are inadmissible as the product of an unlawful search and seizure. See, *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L. Ed.2d 441 (1963). We disagree.

Although at first, when Henry confronted Best as he was exiting the bank, there may not have been sufficient probable cause to conduct a full search, no such search was made. Henry merely conducted a pat-down search of Best's outer clothing. We hold that this initial *"Terry"*-type search was justified by Best's unusual conduct in scouting the three banks and in his hurried exit from the Manufacturer's Hanover bank. See *Terry, supra,* 392 U.S. at 27, 88 S.Ct. 1868. Here, "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

▮ Additional evidence justifying a full search was forthcoming seconds later when Henry was informed by the other officers that they had discovered a dummy grenade on Bryant. This additional, impressive factor provided such probable cause as would justify the arrest of Best. *United States v. Price,* 441 F.2d 1092, 1094 (2d Cir. 1971).

The "demand" note is consequently admissible as an article seized in "plain view." See *Coolidge v. New Hampshire,* 403 U.S. 443, 465–73, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Wolfe,* 457 F.2d 773, 774 (2d Cir. 1972).

▮ The final claim is that Best's inculpatory statement, to the effect that he and Bryant intended to rob the Manufacturer's Hanover bank and that Simpson would drive the getaway vehicle, is inadmissible. In the light of what we have herein disclosed, this claim is without merit and we reject it. The officers certainly had probable cause to arrest all three defendants; it is undisputed they were told of their *Miranda* rights before Best made his statement. We hold his inculpatory statement admissible.

Motions denied in all respects.

So ordered.