# BROWN ET AL. *v.* UNITED STATES

No. 71–6193.   Argued December 7, 1972—Decided April 17, 1973

BURGER, C. J., delivered the opinion for a unanimous Court.

*Lowell W. Lundy* argued the cause and filed a brief for petitioners.

*Mark L. Evans* argued the cause for the United States. On the brief were *Solicitor General Griswold, Assistant Attorney General Petersen, Deputy Solicitor General Lacovara, William Bradford Reynolds,* and *Roger A. Pauley.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

Petitioners were convicted by a jury of transporting stolen goods and of conspiracy to transport stolen goods in interstate commerce, contrary to 18 U. S. C. § 2314 and 18 U. S. C. § 371. The central issue now is whether petitioners have standing to challenge the lawfulness of the seizure of merchandise stolen by them but stored in the premises of one Knuckles, a coconspirator. At the time of the seizure from Knuckles, petitioners were in police custody in a different State. Knuckles successfully challenged the introduction of the stolen goods seized from his store under a faulty warrant, and his case was separately tried.

The evidence against petitioners is largely uncontroverted. Petitioner Brown was the manager of a warehouse in Cincinnati, Ohio, owned by a wholesale clothing and household goods company. He was entrusted with the warehouse keys. Petitioner Smith was a truck driver for the company. During 1968 and 1969, the company had experienced losses attributed to pilferage amounting to approximately $60,000 each year. One West, a buyer and supervisor for the company, recovered a slip of paper he had seen drop from Brown's pocket. On the slip, in Brown's handwriting, was a list of warehouse merchandise, together with a price on each item that was well below wholesale cost. West estimated that the lowest legitimate wholesale price for these items would have been a total of about $6,400, while the total as priced by Brown's list was $2,200. The police were

promptly notified and set up a surveillance of the warehouse. Ten days later, petitioners were observed wheeling carts containing boxes of merchandise from the warehouse to a truck. From a concealed point, the police took 20 photographs of petitioners loading the merchandise onto the truck. Petitioners then locked the warehouse, and drove off. They were followed and stopped by the police, placed under arrest, advised of their constitutional rights, and, with the loaded truck, taken into custody to police headquarters. The goods in the truck had not been lawfully taken from the warehouse and had a total value of about $6,500.

Following their arrest, and after being fully informed of their constitutional rights, both petitioners made separate confessions to police indicating that they had conspired with Knuckles to steal from the warehouse, that they had stolen goods from the warehouse in the past, and that they had taken these goods, on two occasions about two months before their arrest, to Knuckles' store in Manchester, Kentucky. Petitioners also indicated that they had "sold" the previously stolen goods on delivery to Knuckles for various amounts of cash. Knuckles' store was then searched pursuant to a warrant, and goods stolen from the company, worth over $100,000 in retail value, were discovered. Knuckles was at the store during the search, but petitioners were in custody in Ohio.

Prior to trial, petitioners and Knuckles[1] moved to suppress the stolen merchandise found at Knuckles' store. The prosecution conceded that the warrant for the search of Knuckles' store was defective. The District Court held a hearing on petitioners' motion to suppress the evidence. Petitioners, however, alleged no proprietary or possessory interest in Knuckles' premises or in

---

[1] Knuckles was joined in the conspiracy count and was also charged with having received stolen merchandise, contrary to 18 U. S. C. § 2315.

the goods seized there, nor was any evidence of such an interest presented to the District Court. After the hearing, the District Court granted Knuckles' motion to suppress the goods seized, but denied petitioners' motion for lack of standing. The charges against Knuckles were severed for separate trial.

At petitioners' trial, stolen merchandise seized from Knuckles' store was received in evidence. The events leading to petitioners' arrests upon leaving the warehouse and while they were in possession of stolen goods were fully described by police officers who were eyewitnesses. The 20 photographs taken of the crime in progress were admitted into evidence. There was additional incriminating testimony by the owner of the service station from whom petitioners rented trucks used in the thefts, and by five witnesses who saw petitioners unloading boxes from a truck late at night and carrying the boxes into Knuckles' store. The prosecutor also introduced into evidence, over petitioners' objections, portions of each petitioner's confession which implicated the other in a manner now conceded to be contrary to *Bruton* v. *United States,* 391 U. S. 123 (1968). Those considerable parts of each petitioner's confession which did not implicate the other were admitted without objection. The jury returned verdicts of guilty on all counts.

On appeal, the Court of Appeals for the Sixth Circuit recognized that a *Bruton* error had occurred, but went on to conclude that the independent proof of petitioners' guilt was "so overwhelming that the error was harmless," citing *Harrington* v. *California,* 395 U. S. 250 (1969). The Court of Appeals also held that the stolen merchandise seized pursuant to the defective warrant was properly admitted against petitioners, stating:

"This ruling [of the District Court] was correct because appellants claimed no possessory or proprietary

rights in the goods or in Knuckles' store, and it is clear that they cannot assert the Fourth Amendment right of another." 452 F. 2d 868, 870 (1971).

### (1)

Petitioners contend that they have "automatic" standing to challenge the search and seizure at Knuckles' store. They rely on the decision of this Court in *Jones* v. *United States,* 362 U. S. 257 (1960), establishing a rule of "automatic" standing to contest an allegedly illegal search where the same possession needed to establish standing is "an essential element of the offense . . . charged." *Simmons* v. *United States,* 390 U. S. 377, 390 (1968). That case involved (a) a seizure of contraband narcotics, (b) a defendant who was present at the seizure,[2] and (c) an offense in which the defendant's possession of the seized narcotics at the time of the contested search and seizure was a critical part of the Government's case. *Jones, supra,* at 263. Mr. Justice Frankfurter, writing for the Court in *Jones,* emphasized the "dilemma" inherent in a defendant's need to allege "possession" to contest a seizure, when such admission of possession could later be used against him. *Id.,* at 262–264. Mr. Justice Frankfurter quoted the words of Judge Learned Hand:

> "Men may wince at admitting that they were the owners, or in possession, of contraband property; may wish at once to secure the remedies of a possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they

---

[2] Presence of the defendant at the search and seizure was held, in *Jones,* to be a sufficient source of standing in itself. *Jones* v. *United States,* 362 U. S. 257, 267 (1960). Here, of course, petitioners were not present at the contested search and seizure, but were in police custody in a different State. See *Wong Sun* v. *United States,* 371 U. S. 471, 492 n. 18 (1963).

must take on that role, with enough detail to cast them without question. The petitioners at bar shrank from that predicament; but they were obliged to choose one horn of the dilemma." *Connolly* v. *Medalie,* 58 F. 2d 629, 630 (CA2 1932).

The self-incrimination dilemma, so central to the *Jones* decision, can no longer occur under the prevailing interpretation of the Constitution. Subsequent to *Jones,* in *Simmons* v. *United States, supra,* we held that a prosecutor may not use against a defendant at trial any testimony given by that defendant at a pretrial hearing to establish standing to move to suppress evidence. 390 U. S., at 389–394. For example, under the *Simmons* doctrine the defendant is permitted to establish the requisite standing by claiming "possession" of incriminating evidence. If he is granted standing on the basis of such evidence, he may then nonetheless press for its exclusion; but, whether he succeeds or fails to suppress the evidence, his testimony on that score is not directly admissible against him in the trial. Thus, petitioners in this case could have asserted, at the pretrial suppression hearing, a possessory interest in the goods at Knuckles' store without any danger of incriminating themselves. They did not do so.

But it is not necessary for us now to determine whether our decision in *Simmons, supra,* makes *Jones'* "automatic" standing unnecessary. We reserve that question for a case where possession at the time of the contested search and seizure is "an essential element of the offense . . . charged." *Simmons,* 390 U. S., at 390. Here, unlike *Jones,* the Government's case against petitioners does not depend on petitioners' possession of the seized evidence at the time of the contested search and seizure.[3]

---

[3] "Petitioner's conviction flows from his possession of the narcotics *at the time of the search." Jones, supra,* at 263 (emphasis added).

The stolen goods seized had been transported and "sold" by petitioners to Knuckles approximately two months before the challenged search. The conspiracy and transportation alleged by the indictment were carefully limited to the period before the day of the search.

In deciding this case, therefore, it is sufficient to hold that there is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure. The vice of allowing the Government to allege possession as part of the crime charged, and yet deny that there was possession sufficient for standing purposes, is not present. The Government cannot be accused of taking "advantage of contradictory positions." *Jones* v. *United States, supra,* at 263. See *United States* v. *Allsenberrie,* 424 F. 2d 1209, 1212–1214 (CA7 1970); *United States* v. *Cowan,* 396 F. 2d 83, 86 (CA2 1968); *Niro* v. *United States,* 388 F. 2d 535, 537 (CA1 1968); *United States* v. *Bozza,* 365 F. 2d 206, 223 (CA2 1966). But cf. *United States* v. *Price,* 447 F. 2d 23, 29 (CA2), cert. denied, 404 U. S. 912 (1971).

Again, we do not decide that this vice of prosecutorial self-contradiction warrants the continued survival of *Jones'* "automatic" standing now that our decision in *Simmons* has removed the danger of coerced self-incrimination. We simply see no reason to afford such "automatic" standing where, as here, there was no risk to a defendant of either self-incrimination or prosecutorial self-contradiction. Petitioners were afforded a full hearing on standing and failed to allege any legitimate interest of any kind in the premises searched or the merchandise seized.

Nor, incidentally, does the record reveal any such interest.[4] As the Court of Appeals correctly concluded, petitioners had no standing to contest the defective warrant used to search Knuckles' store; they could not then and cannot now rely on the Fourth Amendment rights of another. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. *Simmons* v. *United States,* 390 U. S. 377 (1968); *Jones* v. *United States,* 362 U. S. 257 (1960)." *Alderman* v. *United States,* 394 U. S. 165, 174 (1969). See *Wong Sun* v. *United States,* 371 U. S. 471, 492 (1963).

## (2)

The Solicitor General concedes that, under *Bruton, supra,* statements made by petitioners were improperly admitted into evidence. Neither petitioner testified at the trial. The prosecution tendered police testimony as to statements made by Smith implicating Brown in the crimes charged, even though these statements were made out of Brown's presence.[5] This testimony was

---

[4] Petitioners now contend that they had a partnership "property interest" in or "constructive possession" of the stolen goods found at Knuckles' store, as a conspiracy is a "partnership in crime." Even if the petitioners had not already "sold" the merchandise to Knuckles, their "property interest" in the merchandise was totally illegitimate. The "constructive possession" argument is equally ingenious, but equally unavailing. Even on the doubtful assumption that the alleged conspiracy between petitioners and Knuckles could support a "constructive possession" of the merchandise at Knuckles' store, the conspiracy was alleged to have continued only "to and including the 28th day of August, 1970." The seizure was made on August 29, 1970. Finally, these contentions were not made in the courts below or in the petition for certiorari. They are, therefore, not properly before this Court. *Lawn* v. *United States,* 355 U. S. 339, 362–363, n. 16 (1958).

[5] An FBI agent, Whitley, testified as follows:

"[Smith stated that] during June 1970, another individual who was also employed at Central Jobbing Company, one Joe Brown, had ap-

admitted into evidence. Similar statements, made by Brown relating to Smith, were also admitted. Petitioners' counsel made timely objections.

Upon an independent examination of the record, we agree with the Court of Appeals that the *Bruton* errors were harmless. The testimony erroneously admitted was merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury. In this case, as in *Harrington* v. *California,* 395 U. S. 250 (1969), the independent evidence "is so overwhelming that unless we say that no violation of *Bruton* can constitute harmless error, we must leave this . . . conviction undisturbed," *id.,* at 254. We reject the notion that a *Bruton* error can never be harmless. "[A] defendant is entitled to a fair trial but not a perfect one,"

---

proached him and asked him to help steal merchandise from Central Jobbing Company and help him transport this merchandise to Manchester, Kentucky. He advised me that during June of 1970, he and Joe Brown made two trips to Manchester, Kentucky, with merchandise consisting of household goods and clothing which they had stolen from Central Jobbing Company. He recalled that to the best of his knowledge . . . these dates were June 5th and 29th, 1970. He said that he and Mr. Brown had received approximately one-half the value of the stolen merchandise from the owners of the Knuckles Discount Store in Manchester, Kentucky, and that the owners of the Discount Store knew that the merchandise was stolen. Mr. Smith stated further that he had received approximately $2,500.00 as his share of the money which they had received from the stolen merchandise."

Another witness, a Detective Hulgin from the County Sheriff's Patrol, had also testified to similar statements by Smith, adding that Smith had stated that the list, which was found by West at the warehouse, had been prepared and shown to him by Brown, and that the total price of $2,200 shown on the list was the amount of money that petitioners were to receive for that particular shipment to Knuckles. Hulgin also testified that he was told by Brown that Smith had accompanied Brown on two previous occasions when Brown delivered stolen goods to Knuckles.

for there are no perfect trials. *Bruton* v. *United States,* 391 U. S., at 135, quoting *Lutwak* v. *United States,* 344 U. S. 604, 619 (1953). See *Schneble* v. *Florida,* 405 U. S. 427, 432 (1972); *Chapman* v. *California,* 386 U. S. 18, 23–24 (1967).

*Affirmed.*