MARCUS, Justice.
Ronald Sims was charged by bill of information with attempted armed robbery of Ethel Brandy on December 4, 1974, while armed with a dangerous weapon, to-wit: a pistol. La.R.S. 14:27; La.R.S. 14:64. After trial by jury, defendant was found guilty as charged and was subsequently sentenced to serve thirty years at hard labor. On appeal, defendant relies on two assignments of error for reversal of his conviction and sentence. Both assignments of error relate to pretrial discovery.
FACTS
Mr. and Mrs. Matthew Brandy, Sr. operate a grocery store at 3449 Magnolia Street in the City of New Orleans. Between 5:30 and 5:45 p. m. on December 4, 1974, a man, later identified by them as Ronald Sims, entered the store. After asking Mrs. Brandy the price of a bush comb, Sims placed a gun at her forehead and said: “This is it.” When Mr. Brandy observed this, he grabbed the robber by the shoulders, spun him around, and a scuffle ensued during which four shots were fired at Brandy (three of which hit Brandy in the area of his chest), and Brandy (who had taken a gun he kept behind the counter) fired three shots at Sims, hitting him once.
Sims escaped but left a trail of blood to a location around the next corner where it appeared that he entered a vehicle. The police received a call at approximately seven that evening that a victim of a shooting was in the emergency room of Charity Hospital. Police officers found Ronald Sims there undergoing treatment for a bullet wound of the abdomen. They questioned his mother and girl friend, Virginia Washington, both of whom had accompanied Sims to the hospital. One of the officers saw the outline of a gun under the clothing of Virginia and removed it from her person. Through an investigation, they learned that a stolen vehicle (1963 green Chevrolet) was parked at the corner of Bienville and North Derbigny Streets. Inside the vehicle, they found a pool of blood on the floor, and blood on the car seat and also on a cap. The type of blood found in the car matched that of Sims. Fingerprints were lifted from the vehicle and identified by an expert as belonging to Sims.
Sims took the stand in his own defense and testified that he entered the store on the day in question and inquired of Mrs. *724 Brandy as to the price of a bush comb. When he reached into his pocket to get his wallet, Mrs. Brandy saw the gun which he had in his waistband and started to scream. It was at this time that Mr. Brandy spun him around and shot him. He claims that it was only after he was fired upon by Mr. Brandy that he fired back.
ASSIGNMENT OF ERROR NO. 1
In a motion for a bill of particulars, defendant requested, inter alia-, the following information:
10.What, if any, dangerous weapons and/or instrumentalities were recovered from the person of defendant after he was apprehended for the offense charged ?
The state refused to furnish this particular, claiming that the defense was not entitled to this information. The trial judge upheld the refusal of the state. Defendant argues that the failure of the state to furnish this information prevented him from intelligently filing a motion to suppress the gun used in the armed robbery on the ground of an unconstitutional search and seizure.
The trial judge correctly ruled that the state was not required to answer this question. Initially, the gun was not taken from defendant. Thus, it is doubtful whether defendant has the requisite standing to move for a suppression of the gun seized from Virginia Washington at Charity Hospital. See Brown v. United States, 411 U. S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). In any event, the state is not required to disclose the physical evidence it intends to use to prove the crime charged except in certain limited exceptions not present here. State v. Collins, 308 So.2d 263 (La,1975). Hence, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
Defendant asserts that he sought certain general information concerning the shooting which took place at Brandy’s food store in Nos. 10 through 16 of his motion for a bill of particulars.[1] The state’s refusal to furnish this information was sustained by the trial judge. In brief to this court, defendant contends that he then moved for production of “all weapons and rounds, spent and unspent, in possession of the State in order that defendant might have an opportunity to obtain his own ballistics expert to examine and make findings on these objects.” He asserts that the motion was denied. Defendant argues that production of the weapons was essential to his defense as the case turned on the jury’s finding “as to who was the real aggres *725 sor.” Therefore, the court’s denial of his motion for production constitutes a denial of due process of law.
First, nowhere in the particulars requested does defendant seek production of “weapons and rounds, spent and unspent” for examination by his ballistics expert. The information sought is not subject to pretrial discovery as the state is not required to disclose the evidence it intends to use to prove its case. State v. Thomas, 306 So.2d 696 (La.1975); State v. Kado, 300 So.2d 461 (La.1974) ; State v. Hollingsworth, 292 So.2d 516 (La.1974); State v. Frezal, 278 So.2d 64 (La.1973).
Secondly, the record contains no written motion for inspection by a ballistics expert. According to the minutes of court, defendant “made an oral motion to produce a ballistics expert for the defense” which was denied by the court. This appears to be a request for the state to furnish a ballistics expert for the defense. We have previously denied such requests where there was an inadequate showing of special circumstances which would require the furnishing of an independent expert at the state’s expense. State v. Medlock, 297 So.2d 190 (La.1974); State v. Glass, 283 So.2d 696 (La.1973); State v. Bourne, 283 So.2d 233 (La.1973). Likewise, the appointment of a ballistics expert is not relevant to the central issue “as to who was the real aggressor.” The opinion testimony of a ballistics expert would not, under the present circumstances, have had any probative value in this case. State v. Howard, 325 So.2d 812 (La.1976); State v. Collins, 308 So.2d 263 (La.1975); State v. Walker, 296 So.2d 285 (La.1974). Hence, we do not find that the trial court abused its discretion in this matter. This assignment of error is without merit.
DECREE
For the reasons assigned, the conviction and sentence are affirmed.

. The requested particulars in Nos. 10 through 16 are as follows. (No. 10 has been previously considered under Assignment of Error No. 1.)
10. What, if any, dangerous weapons and/or instrumentalities were recovered from tlie person of defendant after he was apprehended for the offense charged?
11. What, if any, mask or disguise was used by defendant in allegedly committing the offense charged?
12. Is it alleged that anyone was shot or injured by defendant in allegedly committing the offense charged and, if so, please state his or her name and address?
13. If your answer to particular 12 is in the affirmative, was there any ballistic test run on any bullet or slug that purportedly entered the body of the person named in your answer to particular 12?
14. If your answer to particular 13 is affirmative, please summarize the results and/or findings of that ballistics test detailing the time and place said test was made and giving the name(s) and address (es) of the person (s) conducting it.
15. Has defendant been exposed to any line-up since the time of his arrest?
16. Was defendant shot by any person during his alleged commission of the offense charged, and, if so, please state:
a) The name and address of said person,
b) the type and caliber of weapon he used,
c) the number of times he shot defendant and wounded him,
d) the number of times he shot defendant and missed him.