**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 29, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

BEN YAZZEN,

      Defendant-Appellant.

No. 05-2156
(D.C. No. CR-03-2057-JP)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **TYMKOVICH**, Circuit Judge.

By a superseding indictment filed on August 11, 2004, in the United States District Court for the District of New Mexico, Ben Yazzen (the defendant) was charged with seven counts of aggravated sexual abuse of a child under twelve years, in Indian Country, within the boundaries of the Navajo Indian reservation, in New Mexico, in violation of 18 U.S.C. § § 2241(c), 2246(2)(a), 2246(2)(b) and 1153. The acts were alleged to have occurred between December 1, 1997, and September 14, 1999. A jury trial was held on

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

January 27 and 28, 2005, and, after deliberating for approximately two hours, the jury found the defendant guilty on all seven counts. A pre-sentence report set defendant's adjusted base offense level at 43, and, with his criminal history category of II, the guideline range for defendant's sentence was mandatory life imprisonment. The district court accepted the recommendation in the pre-sentence report and sentenced defendant to seven terms of life imprisonment, to be served concurrently-not consecutively!

Some preliminary remarks may set the present controversy in focus. At the outset of the trial, the district court asked some questions of the entire jury panel assigned to the present case. The prospective jurors had already filled out questionnaires, and the district court asked general questions put to all of the jurors, collectively. In the course thereof, one prospective juror stated that she had been a juror "several times" with a "lot of them having to do with alcoholism, shooting, trespassing, and so forth."

The district court, in response to that particular comment, spoke as follows:

> COURT: Let me ask you a few questions. You have a lot of jury experience and one of the cases included alcoholism. *There will be alcoholism in this case. Can you be fair and impartial?* (Emphasis added).

In response to the foregoing statement by the court, the same prospective juror within earshot of the other prospective jurors, said, "let me approach the bench on this one, okay? It doesn't have anything to do with the case, but it does have to do with alcoholism." The district court asked if the prospective juror would like to "come up to the bench," and she said "yes."

Thereafter, a bench conference out of the earshot of the other prospective jurors ensued, involving the district court, the prospective juror, and both prosecution and defense counsel. The transcript of what occurred at the bench conference, out of earshot of the prospective jurors, reads as follows:

> MS. ADRIAN [Defense attorney]: Judge, there's no alcoholism involved in this case, in my case.
>
> THE COURT: I've looked at the record. And have you seen his record?
>
> MS. ADRIAN: But it has nothing to do with this case, though.
>
> THE COURT: All right.
>
> PANELIST: My ex-husband is an alcoholic and was very abusive. That might color my judgment more than being in a court 30 years ago on a case.
>
> THE COURT: You think you would be better serving on a civil case?
>
> PANELIST: Probably, if it has to do with drinking and sexual abuse.
>
> THE COURT: I'll put you on a civil case.
>
> PANELIST: Okay.

Later, out of the presence of the other prospective jurors, the following additional colloquy between the court and counsel occurred:

> THE COURT: When I looked at the Pretrial Services report I have on this fellow, I assumed this would be typical of the Indian Reservation cases I get with alcohol involved. If he doesn't take the stand and testify, and that may happen and/or it may not happen, obviously, you are not going to have

alcohol mentioned. If he does take the stand, he's going to go into the record which is loaded with alcohol.

MS. ADRIAN: No, Your Honor. Those are misdemeanors. Alcohol is a misdemeanor, and I don't think that's a subject of cross-examination for purposes of impeachment, and I don't believe that any of us are alleging that during any of the events that are the subject of this case that there's any alcohol involved.

MR. TORRES [Prosecuting attorney]: There may be one instance, and we'll caution the young witness not to really get into that, but where she indicated that he had been drinking during the course of one of the instances. Now, we don't want to emphasize that, and we would not, under 609, attempt to impeach him with conviction of DUI or anything like that.

THE COURT: I wanted to make sure we got that on the record.

MS. ADRIAN: He used to drink. My concern, Your Honor, is, I just don't want the jury sitting out there thinking he's an alcoholic when that's not germane to the case. So that's the reason I was concerned about asking them about their feelings of alcohol.

THE COURT: You want me to warn them of that despite my comments with the juror earlier?

MR. TORRES: No, just re-emphasis on it, the pink elephant.[1]

MS. ADRIAN: Thank you.

---

[1] An "elephant in the room" is an English idiom for a question or problem that very obviously stands, but which is ignored for the convenience of one or the other party. It derives its symbolic meaning from the fact that an elephant would indeed be conspicuous and remarkable in a small room. The idiom is also occasionally invoked as "pink elephant in the corner," possibly in reference to alcohol abuse, or for no other reason than a pink elephant is more visible than a normal elephant (not that pink elephants exist, obviously). *See* **Wikipedia**, the Free Encyclopedia, *at* http://en.wikipedia.org/wiki/Pink_elephant (last visited June 27, 2006).

Thereafter, apparently without any further problem, a jury was examined and accepted by the parties, and sworn as jurors.

On appeal, defendant raises only one issue, which is the alleged error committed by the district judge during the voir dire examination of the prospective jurors assigned to the case wherein he stated that "there will be alcoholism in this case." More specifically, counsel for the defendant frames the only issue raised in this appeal as follows:

> The trial judge told the jury in voir dire that the case involves alcoholism. This is erroneous, as there was no evidence that the allegations of sexual abuse in this case had anything to do with alcoholism or drinking. Defense counsel immediately objected to the judge's remarks to the jury. The jurors heard the remark. Is there a reasonable probability that this error might have contributed to the jury's verdict, in deprivation of Mr. Yazzen's Fifth Amendment right to due process and his Sixth Amendment right to a fair trial by an impartial jury?

In answer to the question thus posed by counsel, our study of the record leads us to conclude that there was "no reasonable probability" that the district court by its statement to the jury during voir dire deprived the defendant of his Fifth Amendment right to "due process" or his Sixth Amendment right to "an impartial jury."

At trial, no evidence of alcoholism on the part of the defendant was introduced by the government. The defendant had a history of alcohol abuse, but no evidence of that was offered by the government, even though the defendant did testify at his trial and denied ever abusing his daughter, and thereby placed in issue his credibility.

As we understand it, the defendant's basic position in this appeal is that, in its

preliminary questioning of the prospective jurors, the district court violated the defendant's Fifth Amendment right to "due process" and his Sixth Amendment right to an "impartial jury" when it stated to the entire jury panel that "there will be alcoholism in this case," when the truth was that there was no alcoholism involved in the case, and the court was mistaken in saying there was, citing *Burton v. Johnson,* 948 F.2d 1150 (10th Cir. 1991). In other words, the entire panel was irrevocably "tainted" and a "curative instruction" would not have "cured" the problem.

The government's position is that the defendant waived any right to a curative instruction when his counsel, at trial, along with the prosecuting attorney, both stated that neither wanted a curative instruction because such, in their view, would simply exacerbate any problem. Such being the case, the government argues that the defendant waived any right to a curative instruction and that therefore the matter cannot be raised for the first time in this appeal. In thus arguing, the government relies on *United States v. Hardwell*, 80 F.3d 1471 (10th Cir. 1996). In that case, we spoke as follows:

> This argument is without merit. A defendant cannot invite a ruling and then have it set aside on appeal. [citations omitted.] The issue cannot be reviewed for plain error. Errors that are waived rather than merely forfeited through failure to object are not subject to plain error review. *See Olano*, 507 U.S. at 732-34.

*Id.* at 1487.

The defendant's response to the government's position basically is that the defendant's constitutional right to an "impartial jury" trumps any procedural trial

problem. Cases cited by the defendant in support of his proposition are, in the main, concerned with instances wherein a judge has, in effect, if not in so many words, instructed the jury that, in his view, the defendant is guilty of the crime charged. Such does not fit the present facts.

We would note that the defendant never asked the district court to discharge the entire jury panel and start over because of its misstatement that "there will be alcoholism in this case." Nor did the defendant at any time request a mistrial based on the court's misstatement. Further, in this same general regard, in its instructions to the jury, the district court, without objection, instructed the jury, inter alia, as follows: "You must not read into these instructions or anything I may have said or done as any suggestion as to what verdict I think you should return. That verdict is entirely a matter up to you, the jury. That's my mantra, as a judge."

We recognize the severity of the sentence imposed pursuant to the guidelines, i.e., seven life sentences. At the same time, we must recognize the enormity of the seven offenses that the defendant committed against his daughter, for which he was convicted by a jury of his peers. The defendant's trial may not have been "perfect," but in our view it was "fair." "'A defendant is entitled to a fair trial but not a perfect one' for there are no perfect trials." *Brown v. United States*, 411 U.S. 223, 231 (1973). *See also, Bruton v. United States,* 391 U.S. 123, 135 (1968), and *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge