Lanzinger, J.,
dissenting.
{¶ 32} After a thorough review of the record, I conclude that the trial court did not abuse its discretion when during voir dire it declined to remove for cause the *571 hearing-impaired juror. Accordingly, I dissent from the majority’s decision and would reverse and remand the case to the court of appeals.
I. Trial Court Proceedings
{¶ 33} A jury found Speer guilty of both involuntary manslaughter and aggravated vehicular homicide. On appeal, Speer argued that the trial court erred when it failed to disqualify a hearing-impaired juror for cause. The record discloses how this juror came to be seated and was accommodated, and the facts are important to consider.

Voir Dire

{¶ 34} During voir dire, the trial court and the parties directed questions to the hearing-impaired juror, Linda Leow-Johannsen. At one point, she stated that she could not read the judge’s lips, but said that it would not affect her during the trial:
{¶ 35} “[The Court]: Do you think that [your car being stolen] will affect you somehow here?
{¶ 36} “[Leow-Johannsen]. I can’t read your lips. Move your files.
{¶ 37} “[The Court]. Let me move over so you can see me. Will that affect you in this case?
{¶ 38} “A. No.
{¶ 39} “Q. I notice, Ms. Leow, that you and I have some problems communicating, and I want to make sure that you can hear or understand or listen to and see whatever it was that you need to see to get the evidence.
{¶ 40} “Do you think you can do that?
{¶ 41} “A. Yeah.
{¶ 42} “Q. Good. If you are selected as a juror, and you have any problems, you have trouble knowing what the witness is saying, you tell me, and I will make sure that you get a chance to see it. Okay?
{¶ 43} “A. No problem.”
{¶ 44} Later, when Leow-Johannsen responded to a question regarding whether any of the jurors had boating experience, she asked the court to repeat one question:
{¶ 45} “[Leow-Johannsen]. I haven’t been on a boat for so long. I owned my own boat 2001, Baja.
{¶ 46} “[The Court]. And you drive the boat yourself?
{¶ 47} “A. I am sorry, what?
{¶ 48} “Q. I am not a boater. Is the term drive—
*572 {¶ 49} “A. Drive or operate, yes.”
{¶ 50} Both the prosecutor and defense counsel questioned the juror regarding her hearing impairment during voir dire. First, the prosecutor asked what accommodations the potential juror may need:
{¶ 51} “Q. One question for Ms. Johannsen. Are you familiar with — you read lips?
{¶ 52} “A. Yes, yes.
{¶ 53} “Q. If I am standing this way and the witness—
{¶ 54} “A. I can’t read them if you look that way. I don’t know what you said, but this way, I am okay.
{¶ 55} “Q. Is there any other assistance that the Court could give you in understanding what is going on, someone who does sign language?
{¶ 56} “A. I read lips.
{¶ 57} “Q. As long as someone is facing this way, you can?
{¶ 58} “A. I can see. Yes.
{¶ 59} “Q. All right. Thank you. If there is an audio tape, then—
{¶ 60} “A. —then I will have a problem.
{¶ 61} “Q. What do you normally use?
{¶ 62} “A. For the tape, you mean? You mean, for the T.V.?
{¶ 63} “Q. Well, if there is something where you don’t have lips available to read, how do you know—
{¶ 64} “A. If somebody has close captioning, then I can read off of it. I can do that.”
{¶ 65} Later, defense counsel questioned Leow-Johannsen regarding her hearing impairment and specifically asked about tape-recorded evidence:
{¶ 66} “Q. Sometimes lawyers get excited when they are doing things, and you can read my lips, right?
{¶ 67} “A. Right.
{¶ 68} “Q. But you can’t hear?
{¶ 69} “A. I can hear you, but I have to read the lips.
{¶ 70} “Q. So if I were to turn the wrong way to pick something up, you could miss a question?
{¶ 71} “A. Right.
{¶ 72} “Q. Okay. But you could always see what the answer was. You just might not know what the question is unless we are all very, very, very careful. Is that what you are telling me?
*573 {¶ 73} “A. Yes. If you turn your back, I can’t read your lips.
{¶ 74} “Q. Okay. And I know Ms. Croy [the prosecutor] got into this a little bit. I am sure some of the evidence is going to be tape recorded. How is it that we could accommodate you on that? If we are going to play a tape and the tape is going to be words, no lips, obviously, what do you need in order for us—
{¶ 75} “A. —type it down for me.
{¶ 76} “Q. Something like that our court reporter could do for you?
{¶ 77} “A. Yes.”
{¶ 78} The record also indicates instances during voir dire in which this juror engaged in conversation with the court and attorneys without any apparent communication problems.

For-Cause and Peremptory Challenges

{¶ 79} Before exercising any peremptory challenges, both the prosecution and defense were given opportunities to challenge jurors for cause. The defense stated that it wished to challenge Leow-Johannsen for cause:
{¶ 80} “MR. DAVIDSON: * * * I am concerned about Linda Leow.
{¶ 81} “THE COURT: Is that the juror who has a hearing impairment?
{¶ 82} “MR DAVIDSON: Yes, Your Honor.
{¶ 83} “My position on that subject is that if any of us turn our backs on her in asking our questions, she will be able to read the lips of whatever witness is there, but if we happen to turn around or do anything where she misses something, I am concerned that she is not going to hear all the evidence. And she is a nice, friendly lady, and I am concerned that given, that she maybe — I am sure she misses about five percent of everything in her life and fills the rest in.
{¶ 84} “THE COURT: What is the State’s position?
{¶ 85} “MS. CROY: I think that is not a challenge for cause. The State does not consent to a challenge for cause. It is not one of the bases.
{¶ 86} “THE COURT: It is not a statutory basis, and the Courts have made accommodation for persons with various kinds of impairment. I am going to deny the challenge for cause. You can exercise a peremptory challenge.
{¶ 87} “MR. DAVIDSON: I understand.
{¶ 88} “MR. BUZZELLI [defense co-counsel]: While we are on the subject, is it possible to get her some type of accommodation?
{¶ 89} “THE COURT: We will try in every way we can, but I can’t guarantee that we will always be successful.”
*574 {¶ 90} The defense then proceeded to exercise all four of its allotted peremptory challenges on other jurors.

Accommodations

{¶ 91} The court made multiple accommodations to assist the juror during the trial. The court had originally seated the jurors in the order of the numbers assigned to them, which meant that Leow-Johannsen was in the fifth chair in the front row of the jury box. At the suggestion of the prosecutor, the court moved Leow-Johannsen closer to the witnesses:
{¶ 92} “THE COURT: Ms. Johannsen, we want to assist you in every way that we can. I think we could start by having you trade places with Ms. Elliott, if you would not mind. This way, if at any time, you have any difficulty, raise your hand. Where there is material that is only on an audio tape, we will have you come down and sit next to the court reporter who is writing it on a screen, and you will be able to read what she writes on a screen. (Court reporter indicating.)”
{¶ 93} It is important to recognize that defense counsel offered no objection to either the juror’s seating arrangement or the court’s proposed accommodations.
{¶ 94} During the state’s case, the prosecutor asked the court’s permission to play a 9-1-1 tape recorded on the evening Speer was alleged to have committed the homicide. After the defense declined to offer an objection to the tape, the trial court stated, “At this point Ms. Johannsen has moved to watch the screen of the court reporter. You may proceed to play the tape.” The tape was then played to the jury, while Leow-Johannsen watched the court reporter’s transcription. The defense did not object to the accommodation given to the juror by the trial court.
{¶ 95} After the jury had begun deliberations, the jury submitted a question asking the court to provide a written transcript of the 9-1-1 call for Leow-Johannsen. Both the prosecution and the defense agreed that the juror should be given a transcript.

Motion for New Trial

{¶ 96} After the jury’s verdict was announced, Speer filed a motion for new trial. The first issue raised involved the trial court’s decision to allow Leow-Johannsen to remain on the jury after the defense’s voir dire objection: “The government and trial court denied defendant of his Ohio and U.S. Constitutional right to a fair jury trial by allowing Juror # 1 to sit in judgment over defendant’s case, over objection, without making any accommodations to assist her in “hearing” or obtaining the verbal and audio evidence adduced at trial nor in assisting her during deliberations.” (Underlining sic.) Speer argued that the *575 court faded to make necessary accommodations, which resulted in the juror’s inability to fully hear witnesses and the 9-1-1 tape. In a footnote, he argued that the trial court should have provided Leow-Johannsen with assistive listening devices. In summary, Speer argued that he did not receive a fair trial because the juror did not have equal access to the testimony and evidence introduced at trial.
{¶ 97} The trial court denied Speer’s posttrial motion for new trial. The court first stated that neither the state nor the defense inquired about the extent of the juror’s hearing disability or the exact extent to which she relied upon lip reading to supplement any residual hearing. Second, the court noted that neither party complained during the trial that the juror was missing any testimony and that neither party requested any further accommodations for the juror’s disability. Finally, the court noted that the defense did not request that an alternate juror replace Leow-Johannsen or file a motion for a mistrial on grounds that the juror was unable to understand or appreciate evidence. The court thus dismissed the defendant’s argument that the juror’s hearing impairment might have caused her to miss some testimony or the full content of the 9-1-1 recording as “general speculation” and denied the motion.
{¶ 98} The court of appeals held that because the state had directed the jury during its closing argument to consider Speer’s “demeanor” on the 9-1-1 tape, the state was asking the jurors to listen for voice inflections or signs of insincerity during the taped call to show that Speer had acted with a mental state of purposefulness or recklessness. State v. Speer, 180 Ohio App.3d 230, 2008-Ohio-6947, 904 N.E.2d 956, at ¶ 32. It then concluded that since a hearing-impaired juror would be unable to fully perceive the nuances of the 9-1-1 tape, the tape is “the kind of evidence that could not be adequately or effectively evaluated by a hearing-impaired juror.” Id. at ¶ 33.
II. No Abuse of Discretion
{¶ 99} The determination whether a prospective juror should be disqualified for cause is a discretionary function of the trial court, and the trial court’s determination will not be reversed on appeal unless there has been an abuse of discretion. Berk v. Matthews (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301, syllabus. “The opportunity for jury service should not be denied or limited on the basis of * * * disability.” Rules of Superintendence for the Courts of Ohio, Appendix B, Ohio Trial Court Jury Use and Management Standards, Standard 1(A). Thus, “[i]t is the obligation of every court to reasonably accommodate the special needs of physically handicapped jurors.” Id. at Commentary. While trial courts must accommodate disabled jurors to serve on juries whenever possible, this responsibility is subject to the defendant’s due process and fair-trial rights. Thus, R.C. *576 2313.43 provides that any juror may be challenged on any cause “that may render him at the time an unsuitable juror.”
{¶ 100} Based upon these principles and upon my review of the record, I would hold that the trial court did not abuse its discretion in refusing to dismiss Leow-Johannsen for cause. Although the majority is correct in stating that a court’s primary concern is ensuring that an accused has a fair trial, we cannot require trial courts to be clairvoyant. Instead, when faced with a challenge for cause, the trial court must have full discretion to analyze the salient facts and rule accordingly. Here, the trial court, prosecution, and defense all had opportunities to question the juror regarding the extent of her hearing disability. She indicated that she would be able to read lips to augment her hearing, and in response to a question by defense counsel stated that if a tape recording were to be played for the jury, she would be able to understand it by reading the court reporter’s typed transcription of the tape.
{¶ 101} Furthermore, attorneys are charged with protecting the interests of their clients. The defense was presented with a number of opportunities to object to the accommodations afforded to Leow-Johannsen, yet never raised any objection during the trial. In holding that the trial court abused its discretion, the court of appeals and the majority conclude in hindsight and contrary to the case record that this juror was unable to adequately or effectively evaluate the 9-1-1 tape. This conclusion, however, does not consider that the defendant raised this objection only after the completion of the trial. The defendant did not object when the 9-1-1 tape was played to the jury and did not then request that Leow-Johannsen be replaced by an alternate juror.
{¶ 102} “ ‘ “[A] defendant is entitled to a fair trial but not a perfect one,” for there are no perfect trials.’ ” Brown v. United States (1973), 411 U.S. 223, 231, 93 S.Ct. 1565, 36 L.Ed.2d 208, quoting Bruton v. United States (1968), 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476, quoting Lutwak v. United States (1953), 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593. The standard set forth by the majority’s opinion comes dangerously close to encouraging trial courts to dismiss disabled jurors outright rather than risk reversal on appeal.
{¶ 103} The record indicates that when the trial court decided the challenge for cause, the only argument raised against the juror was the defense counsel’s concern that Leow-Johannsen might not hear all the evidence if an attorney or witness turned away from the jury box. Defense counsel’s argument in support of the challenge for cause thus focused on the juror’s ability to understand the witness testimony, not on her ability to hear the tone and inflection of the voice on the 9-1-1 tape. The trial court weighed the defense’s concern against all information gathered in the voir dire proceedings and acted within its discretion in determining that it would be able to accommodate Leow-Johannsen.
*577 Mark E. Mulligan, Ottawa County Prosecuting Attorney, for appellant.
Bradley Davis Barbin; and Maguire & Schneider, L.L.P., and Mark R. Meterko, for appellee.
Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Elisabeth A. Long, Deputy Solicitor, and Samuel Peterson, Assistant Solicitor, urging reversal for amicus curiae Ohio Attorney General.
Ohio Legal Rights Service and Jane P. Perry, urging reversal for amici curiae Ohio Association of the Deaf, Communication Services for the Deaf, Ohio School for the Deaf, and Ohio Legal Rights Service.
Marc P. Charmatz, Rosaline Crawford, Barbara Raimondo, and Michael S. Stein, urging reversal for amicus curiae National Association of the Deaf.
Thomas J. Zraik, urging reversal for amicus curiae Ability Center of Greater Toledo.
{¶ 104} While I would hold that the trial court did not abuse its discretion in this case, I wish to emphasize that trial courts must carefully consider a defendant’s rights to due process and a fair trial when determining whether a person with a particular disability may serve on a jury. In this case, the trial court determined that Leow-Johannsen could perceive and comprehend the trial proceedings, provided that she received certain accommodations. Under different circumstances, a trial court may appropriately grant a challenge for cause after determining that a person’s disability prevents that person from perceiving and comprehending the evidence presented at trial. “Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at a trial.” Batson v. Kentucky (1986), 476 U.S. 79, 87, 106 S.Ct. 1712, 90 L.Ed.2d 69. It is important that discretion to make this assessment remains with the trial court, which is in the best position to weigh all information and circumstances before it. See State v. Johnson, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 187 (“[UJnder our system it is [the trial] judge who is best situated to determine competency to serve impartially”).
III. Conclusion
{¶ 105} Based on the record, the trial court’s decision to deny the challenge for cause to Leow-Johannsen did not reach the level of an abuse of discretion. I therefore respectfully dissent and would reverse and remand the case to the court of appeals for determination of the remaining assignments of error.
Cupp, J., concurs in the foregoing opinion.