■    THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD RANTON, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered November 17, 1975, convicting him of attempted possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal also brings up for review a prior order of the same court dated October 9, 1975, which denied defendant's motion to suppress certain physical evidence. Judgment and order reversed, on the law and the facts, motion to suppress granted, and indictment dismissed. Although the record indicates that the informant told the officers that codefendant Waddy had pointed a gun at him, the record is totally

devoid of any evidence that the officers had reason to believe that the gun was still in Waddy's possession at the time of the search, or that it had ever been present in the room in which the search was conducted. Assuming that it was proper to search Waddy, there was no basis for searching the remaining occupants of the room once the search of Waddy proved fruitless. This vague record fails to establish that the informant had observed Waddy in the apartment in possession of the gun. One could just as easily assume that the informant had observed Waddy in possession of the gun earlier in the day, and that he had called the police when he observed Waddy entering the room hours later. We do not pass upon the question whether the search of the occupants of the room would have been proper if the informant had told the officers that Waddy had recently pointed the gun at him in the apartment. Martuscello, Acting P. J., Cohalan and O'Connor, JJ., concur; Latham and Hawkins, JJ., dissent and vote to affirm the judgment and order, with the following memorandum: The police, upon good and sufficient cause, entered the premises to investigate whether the person named by the informant, and at whom the gun had been pointed, had such weapon in his possession. The premises entered by the police officers was a closed room in which a card game was in progress. Some 10 to 12 men, together with the informant, were present. With good cause, believing that one of those present was armed with a revolver, a search was made of the person identified, but no gun was found in his possession. The police were justified in assuming that the gun may have been given to one of the others present for safekeeping or concealment. The facts differ appreciably from those in *People v Sanchez* (38 NY2d 72), where a bulge in a pocket prompted the search. Here the officer could point to "particular facts" from which it was not unreasonable for an inference to have been drawn that the defendant posed an imminent danger (see *People v Sanchez, supra,* p 75, citing *People v Mack,* 26 NY2d 311, 316–317, and *Sibron v New York,* 392 US 40, 64). Officer Wichelns and two fellow officers, while on radio motor patrol on May 1, 1975, at approximately 9:10 in the evening, responded to a radio call advising that there was a man with a gun at 171–02 Liberty Avenue. Arriving at that location, a bar and grill, they were met by a Mr. Madison, who, upon exiting from the bar, stated that he had called the police. Based upon the conversation with Officer Wichelns, the officers crossed the street. Positioning themselves around a door to a building, they knocked and stated: "Open the door fast, it is the police." A man opened the door and allowed the police officers and the man who had summoned them to enter. Of the dozen or so men in the room, five or six were seated around a table in the middle of the room playing cards. The man who called the police singled out codefendant Waddy as the one who had pointed the gun at him. As a result, he was placed under arrest and handcuffed. He was then searched, but it revealed nothing. Thereafter the officers searched the others in the room. One of the other officers, in searching the defendant, placed his hand in his vest pocket and found a .22 caliber revolver. The gun was removed and defendant was handcuffed and placed under arrest. We find that the requisite "exigent circumstances", as defined in *People v Sanchez (supra,* p 75), were present, for here the officers could "point" to " 'particular facts' from which an inference could be drawn that defendant posed an imminent danger to him or his partner *(People v Mack,* 26 NY2d 311, 316–317; *Sibron v New York,* 392 US 40, 64)" *(People v Sanchez, supra,* p 75). Here the search was warranted, for if the officer "reasonably suspected" that he was in danger of physical harm (see CPL 140.150, subd 3), the seizure was lawful. Unlike the search in *Sanchez,* this search had its

genesis in a direct encounter with the informant; it was not an accidental, immediate appraisal of the situation by police. Furthermore, the weapon there seized was a blackjack, thus the "hard object" could have been a "glasses case, comb or wallet" (see *People v Sanchez, supra*, p 75). At bar, on the contrary, the police did have information "linking defendant to possession of a weapon (see *People v Moore*, 32 NY2d 67, 72; *Adams v Williams*, 407 US 143)", and we find present, under the facts, "exigent circumstances * * * to justify the immediate intrusion into defendant's pockets *(People v Taggart*, 20 NY2d 335, 342–343)" (see *People v Sanchez, supra*, p 75). During the pendency of this appeal, the Court of Appeals, in *People v Stewart* (41 NY2d 65) and *People v Townes* (41 NY2d 97) again reviewed the "articulated facts" rule justifying searches and seizures. In *Stewart,* it is stated that "the deterrent purpose of the exclusionary rule must take into account the appropriateness of the police response" (p 67). That opinion further stated, "The primary issue is whether or not the police possessed sufficient knowledge at the outset to sustain the subsequent intrusions on the privacy of the individuals accosted *(People v De Bour,* 40 NY2d 210, 224, *supra; People v Lypka*, 36 NY2d 210)" (p 68). At bar, the authority and source of information was the informant, who had real evidence of the existence of the gun, for he had been threatened with it and had conveyed such information directly to the police. Thus, unlike the situation in *Stewart,* a reversal cannot be justified by holding that such information and source did not provide a reasonable suspicion. We find, in view of the circumstances attendant upon the search of the various men in the closed room, that the search was "justified in its inception" and "reasonably related in scope to the circumstances which rendered its initiation permissible" (see *People v De Bour,* 40 NY2d 210, 215). We find that the police acted neither capriciously nor arbitrarily when, entering the room after receiving cogent information that one of the men present was carrying a gun and, after frisking the suspect and failing to find the gun, they searched the others present on the fair assumption that the weapon may have been given to another for safekeeping or for concealment.