THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ROBERT WADDY, Appellant.

Second Department, July 31, 1978

## APPEARANCES OF COUNSEL

*McCarthy & Dorfman (David W. McCarthy* of counsel), for appellant.

*John J. Santucci, District Attorney (Aley Z. Alexander* of counsel), for respondent.

### OPINION OF THE COURT

MARGETT, J.

On this appeal from a judgment convicting defendant of attempted criminal possession of a weapon in the third degree, two issues are raised. The first, whether defendant has standing to challenge the seizure of physical evidence taken from a codefendant, brings into focus the doctrine of "automatic standing"—is the doctrine still viable and, if so, does it apply to the facts of this case? The second issue, whether defendant's admission at the police station should have been suppressed, raises the question whether the admission was so tainted by the illegal seizure of the gun as to constitute "the fruit of the poisonous tree".

Defendant and one Edward Ranton were indicted for criminal possession of a weapon in the third degree. The indictment charged that the defendants, while "acting in concert", unlawfully possessed a loaded pistol in a place other than their homes or places of business.

Both defendant and Ranton moved to suppress the physical evidence and, in addition, defendant moved to suppress an admission he had allegedly made. A combined suppression-*Huntley* hearing for both defendants was conducted by the Criminal Term.

The sole witness at that hearing was Officer George Wichelns. He testified that on May 1, 1975 he was on plain-clothes duty in an unmarked car. Around 9:10 P.M. he received a radio run about a "man with a gun" at a particular address.

He arrived at that address within a few minutes and was on his way into a bar at that address when he was met by a man exiting the bar, who told him he had called. As a result of his conversation with the complainant, one Loia Madison, he and two other policemen crossed to the other side of the street and sought entry into a building; Madison accompanied them. The officers, who had drawn their guns while crossing the street, knocked on the door, identified themselves as police officers, and demanded that the door be opened. When a man opened the door, the officers and Madison entered the room.

A card game was in progress and there were between 8 and 12 people in the room. Officer Wichelns asked Madison "if anyone was here who put the gun on you and he pointed to the defendant Waddy." Defendant was handcuffed and then searched, but nothing was found on his person. The police then commenced searching everyone else in the room (they did, in fact, do so) and, after one or two other people had been searched, one of the other officers found a gun on codefendant Ranton.

Defendant and Ranton were taken to the police station and given their *Miranda* warnings. After the completion of the warnings, Officer Wichelns asked the defendants if they were willing to answer any questions without an attorney being present. Neither of the defendants answered. Wichelns proceeded to ask the defendants pedigree information and, after filling out the pedigree, he asked Ranton if the gun was his. Ranton said no, he was "holding it for Waddy." Wichelns then asked Waddy if the gun was his, and Waddy replied in the affirmative. Although Waddy was "full-down drunk" *[sic]*, he responded instantaneously to Officer Wichelns' questions.

Criminal Term denied all defense motions. The search and seizure were held to be proper (on the merits—the issue of defendant's standing was not raised by the People), and it was found that defendant "was sufficiently capable of understanding the meaning of his statements (see *People v Schompert,* 19 NY2d 300)."

Thereafter, both defendant and Ranton pleaded guilty to attempted criminal possession of a weapon in the third degree.

Ranton's appeal was decided by this court on March 7, 1977 (*People v Ranton,* 56 AD2d 854). In reversing his conviction, a majority of this court held (p 855): "[Even a]ssuming that it was proper to search Waddy, there was no basis for searching the remaining occupants of the room once the search of

Waddy proved fruitless. This vague record fails to establish that the informant had observed Waddy in the apartment in possession of the gun. One could just as easily assume that the informant had observed Waddy in possession of the gun earlier in the day, and that he had called the police when he observed Waddy entering the room hours later. We do not pass upon the question whether the search of the occupants of the room would have been proper if the informant had told the officers that Waddy had recently pointed the gun at him in the apartment."

At bar both sides direct their attention to the question whether defendant has standing to challenge the police officers' search of Ranton and the resulting seizure of the weapon. Defendant argues that he has "automatic standing" since he is charged with possession of the gun. The People argue, in essence, that the "automatic standing" doctrine is no longer good law. It is contended that the doctrine was based on two "special problems" in existence at the time the rule was enunciated in *Jones v United States* (362 US 257)—(1) "the assertion of possession necessary for Fourth Amendment standing would conflict with [a] defendant's Fifth Amendment protection against self-incrimination, as his suppression statements could be used against him at trial according to the law at that time" and (2) the problem of "contradictory assertions by government, in that, while subjecting defendant to the penalties of lawless possession, he is refused the remedies designed for one in that situation."

It is said that the first problem no longer exists, since *Simmons v United States* (390 US 377) held that testimony at a suppression hearing may no longer be admitted against the defendant at the trial. As for the second problem, it is argued that it was "fallacious reasoning" for the Supreme Court of the United States to conclude that "criminal possession and Fourth Amendment protection are the same". *Brown v United States* (411 US 223) is cited as "recognizing that the purpose for which the rule of automatic standing was invented no longer existed, [and that the Supreme Court of the United States in *Brown]* refused to apply the rule."

The People further argue that the rule is inapplicable in the context of the instant case, since defendant's interest in the seized gun is "totally illegitimate."

With respect to the admission, defendant contends that the People failed to sustain their burden of establishing a valid

waiver of his Fifth and Sixth Amendment rights in that (a) he never "expressly" waived those rights and (b) he was too drunk to know what he was doing. The People, citing, *inter alia, People v Schompert* (19 NY2d 300, 305, cert den 389 US 874), counter that no express statement of waiver is necessary if the circumstances demonstrate that such a waiver was otherwise made, and that self-induced intoxication renders a confession inadmissible only if the accused is intoxicated to the degree of mania or to the degree of being unable to understand the meaning of his statements. The People further point out that defendant's answers were instantaneous and that he was a predicate felon, not inexperienced with the criminal justice system.

■ ■ The judgment of conviction should be reversed and the indictment dismissed. On these facts, the doctrine of "automatic standing" is applicable and defendant may properly challenge the illegal search of Ranton and the seizure of the gun. Furthermore, we hold that the admission made by defendant was so tainted by the illegal seizure of the gun as to constitute "the fruit of the poisonous tree" (see *Brown v Illinois,* 422 US 590; *Wong Sun v United States,* 371 US 471).

■ Contrary to the position taken by the People, the doctrine of automatic standing is still viable, certainly in New York. *Brown v United States* (411 US 223, 228, *supra)* recognized that the "self-incrimination" purpose for the doctrine was no longer valid in the light of *Simmons v United States* (390 US 377, *supra),* but held that "it is not necessary for us now to determine whether our decision in *Simmons* * * * makes *Jones'* 'automatic' standing unnecessary. We reserve that question for a case where possession at the time of the contested search and seizure is 'an essential element of the offense . . . charged' [citing *Simmons]"* (411 US, at p 228). Automatic standing was not applied in *Brown v United States (supra), inter alia,* because the indictment had been carefully limited to possession of stolen goods in the period before the day of the search and, hence (p 228), "the Government's case against [defendants] * * * does not depend on [their] * * * possession of the seized evidence at the time of the contested search and seizure."

"We simply see no reason to afford such 'automatic' standing where, as here, there was no risk to a defendant of either self-incrimination or prosecutorial self-contradiction" (411 US, at p 229).

In *People v Hansen* (38 NY2d 17), the Court of Appeals recognized that *Brown* had not abandoned the doctrine of automatic standing. It acknowledged (pp 22-23) that the Supreme Court in *Brown,* had "indicated some receptivity * * * to reconsideration" of the doctrine, but "decline[d] the court's invitation, if indeed it be that, in *Brown"* to depart from the doctrine. Thus, it was held (p 22) that "automatic standing" is accorded to a defendant "where possession of the property seized at the time of the contested search and seizure is an essential element of the offense charged." (See, also, *People v Goodman,* 51 AD2d 1008.)

At bar, the indictment and the facts in this record indicate that possession—constructive possession to be sure—at the time the gun was seized is one of the elements of the People's case. While it might be argued that the People could predicate their case against defendant on the basis of possession at the time he allegedly "put the gun" on the complainant, there is nothing in the record to indicate that the complainant identified the gun taken from Ranton as the same gun which was allegedly held by defendant earlier in the evening. (In this regard it should be noted that defendant was never indicted for menacing.) Accordingly, on this record it is contradictory for the People to argue that defendant may not challenge the seizure of the gun, and we hold that the doctrine of "automatic standing" is applicable on these facts.

The People's argument, that "automatic standing" cannot be accorded because defendant's interest in the gun was "totally illegitimate", is misplaced since a proprietary interest in a seized object accords standing to the owner quite without regard to the doctrine of "automatic standing" (see *People v Hansen,* 38 NY2d 17, 22, *supra).* Since defendant has standing to challenge the seizure of the gun, it must be suppressed as to him upon this court's reasoning in *People v Ranton* (56 AD2d 854, *supra).*

■ The admission made by defendant at the police station must also be suppressed. Although Criminal Term had adequate evidence to support its finding that defendant "was sufficiently capable of understanding the meaning of his statements" (see *People v Schompert,* 19 NY2d 300, *supra; see, also, People v Solari,* 43 AD2d 610), the admission should nonetheless have been suppressed because of its "direct causal link" to the illegal seizure of the gun (see *People v Martinez,*

37 NY2d 662, 669; *Brown v Illinois,* 422 US 590, *supra; Wong Sun v United States,* 371 US 471, *supra).*

In *Brown v Illinois (supra),* admissions made less than two hours after defendant's illegal arrest were ordered suppressed even though defendant had received his *Miranda* warnings before the admissions were made. The Supreme Court listed three factors to be taken into account in determining whether an admission had been obtained by exploitation of an illegal arrest (422 US, at pp 603-604): (1) "[t]he temporal proximity of the arrest and the confession"; (2) "the presence of intervening circumstances"; and (3) "the purpose and flagrancy of the official misconduct" (see *People v Martinez, supra,* p 666). While it is true that *Brown* has most often been cited in cases involving questionable *arrests* (as contrasted with illegal *searches)* (see, e.g., *People v Johnson,* 40 NY2d 882; *People v Chapple,* 38 NY2d 112), the Supreme Court of the United States in *Brown v Illinois (supra,* p 597), made it clear that it was dealing with principles (initially set forth in *Wong Sun v United States, supra)* "to be applied where the issue is whether statements and other evidence obtained after an illegal arrest *or search* should be excluded" (emphasis supplied).

Here, the illegal seizure of the gun and defendant's admission were in close temporal proximity; the only intervening circumstance was the giving of the *Miranda* warnings; the official misconduct was flagrant (every person in the room was searched without cause) and had as its sole purpose the discovery of the gun (see *Brown v Illinois,* 422 US 590, 603-604, *supra;* see, also, *People v Martinez,* 37 NY2d 662, 666, *supra).* Notwithstanding the fact that defendant's arrest was effected in good faith, and with probable cause, it was the subsequent illegal search which directly resulted in defendant's admission that he owned the gun (cf. *People v Martinez, supra).* The question—"Is this your gun?"—would not have been asked had the police simply arrested defendant on the spot, instead of proceeding to search every person on the premises. Accordingly, the admission should be suppressed and the indictment dismissed.

TITONE, J. P., and SUOZZI, J., concur; HAWKINS, J., concurs in the result on constraint of the decision in *People v Ranton* (56 AD2d 854).

Judgment of the Supreme Court, Queens County, reversed,

on the law and the facts; motion to suppress granted, indictment dismissed and case remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.