■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DENNIS BUCKLEY, Appellant.—Judgment, Supreme Court, New York County, rendered March 29, 1979, reversed, on the law, and case remanded for a hearing on defendant's motion to suppress. The defendant entered a plea of guilty to criminal possession of a weapon in the third degree following denial of his motion to suppress several guns. The motion to suppress was summarily denied on the finding by the court that "The sworn allegations of fact do not as a matter of law support the ground alleged" (CPL 710.60, subd

3, par [b]). We do not agree and accordingly remand for a hearing on the motion to suppress. Piecing together the underlying facts from the varied sometimes unclear papers submitted on the original motion to suppress and on a motion for reargument, it appears that a codefendant, one Scigowski, had sublet a loft to a Michael Stone. The term of the sublease drawing to an end, Stone and several companions were removing stereo equipment from the premises. Apparently believing that Stone and the others were appropriating property that belonged to him, Scigowski, accompanied by the defendant and others, arrived at the loft on the evening of August 21, 1977, where they displayed guns and ordered Stone and his companions to retrieve all the property previously removed. Three of the codefendants accompanied one Stewart in the latter's van to retrieve the removed property. Police responded to a 911 call and sought to enter the premises. Appellant and a codefendant placed pistols in a safe on the premises and admitted the police. Appellant and the codefendant were arrested in the loft. The others were arrested as they left the van with Stewart. Three loaded handguns were recovered from the safe and another from the van's glove compartment. Controlling here is *People v Hansen* (38 NY2d 17, 22) in which the Court of Appeals said: "The Supreme Court has further accorded what it has denominated 'automatic standing' to a defendant where possession of the property seized at the time of the contested search and seizure is an essential element of the offense charged". The court found *Hansen* inapplicable on the view that the property seized was not an essential element of the offense charged since the charges in the indictment were not based upon the claimed possession of the defendant at the time of the seizure but rather upon the testimony of the victims that the defendants brandished guns during the course of the robbery. (Cf. *Brown v United States,* 411 US 223.) We disagree with this finding. On this record we cannot exclude the possibility that the guns seized were an essential element at least of the possession charges in the indictment, to one of which the defendant indeed pleaded guilty. (See *People v Hansen, supra,* p 23; see, also, *People v Waddy,* 63 AD2d 492.) The operability of the displayed guns is clearly an essential element of the possession counts. We recognize that there is language in the majority opinion of the United States Supreme Court in *Rakas v Illinois* (439 US 128), that places in serious doubt the continued viability of the automatic standing doctrine, although that doctrine in its accepted formulation was not directly in issue in *Rakas* and the opinion of the Supreme Court was primarily addressed to a separate issue. We think that it is for the Court of Appeals, not this court, to determine whether the *Rakas* opinion effectively overturns the doctrine it explicitly reaffirmed in *Hansen (supra).* This seems to us particularly clear in view of the response by the Court of Appeals in *Hansen* to the very comparable argument advanced in Judge Gabrielli's dissenting opinion in that case (pp 22-23): "As noted in Judge GABRIELLI's dissent, the Supreme Court may be said to have indicated some receptivity, in the light of its later decision in *Simmons v United States (supra)* to reconsideration of its 'automatic standing' decision in *Jones (Brown v United States, supra,* pp 227-228). The occasion for such reconsideration, if any, has not yet been presented to that court, however, and thus, its decision stands unaffected by subsequent judicial determination. We now decline the court's invitation, if indeed it be that, in *Brown,* noting that the Code of Pre-Arraignment Procedure adopted by the American Law Institute (1975) (§ SS290.1, subd [5], par [f]) would also accord standing to appellant in the circumstances of this case." Concur—Fein, J. P., Sandler and Sullivan, JJ.

Bloom, J., dissents in a memorandum as follows: Defendant Buckley appeals from a judgment, entered upon his plea of guilty, convicting him of criminal possession of a weapon in the third degree and sentencing him to a five-year term of probation. The sole issue here urged is whether Criminal Term in denying his motion to suppress physicial evidence without a hearing, based upon his lack of standing, acted erroneously. I would affirm. One Sylvester Scigowski (a defendant in the action although not a party to this appeal) sublet a fifth floor loft located at 5 East 16th Street, New York City, to Michael Stone for use as a discotheque. The premises were equipped with a stereo system and other appropriate trappings. Whether the equipment had been included as part of the sublet or had been placed there by Stone is not indicated. Stone had fallen into arrears in the payment of rent and had been told to pay up or to vacate the premises. He elected to vacate. In the process he removed and was removing certain items of property and equipment. Some of the removed items were stored at his mother's home while he, James Stewart and Lasalle Bell, his associates, were loading other items into a van parked downstairs. The van had been borrowed by Stone from his friend, Richard Long. Scigowski learned of the removal of these items of property. He rounded up four of his friends, included among whom was defendant Buckley. At gunpoint they extracted from Stone the admission that some of the property was at his mother's house while other items were in the van. Scigowski and two others left for the home of Stone's mother. Buckley and Russo (who is also a defendant, although not involved on this appeal) remained behind in the loft with Stone, Stewart and Bell. The police had been notified that something was amiss. As they sought entry into the loft, the weapons brandished by Buckley and Russo were placed in a safe in the premises. After the police entered, a search of the safe disclosed three weapons. A search of the van brought to light a fourth weapon. In disposing of the motion to suppress, Criminal Term quoted from *People v Cefaro* (21 NY2d 252, revd on rearg on other grounds 23 NY2d 283) that (p 257) "a stranger has no standing to assert that evidence in another's house or premises has been seized unlawfully against the owner or tenant of the premises". Thereupon Buckley moved to reargue, bottoming his claim on the assertion that the weapons would be offered in evidence against him, and, therefore, he was entitled to seek their suppression. Citing *Brown v United States* (411 US 223), Criminal Term noted that Buckley was not entitled to automatic standing since proof of the crime charged would flow from the testimony of the complainants that he had possessed a weapon while in the loft and not from the weapons found in the safe.* The doctrine of automatic standing to challenge a search claimed to be illegal finds origin in *Jones v United States* (362 US 257). There Federal narcotics agents entered an apartment under authority of a search warrant. They found, in an awning outside one of the apartment windows, a birds' nest containing narcotics without tax stamps and narcotics paraphernalia. Jones sought to suppress the physical property seized upon the ground that the warrant had been issued without probable cause. The evidence submitted on the motion disclosed that the apartment belonged to a friend of Jones who had given him a key and the right to the use of the apartment. In according standing

---

* This conclusion is subject to serious question. Upon a trial the prosecution would be required to demonstrate not only possession but operability as part of the People's case (Penal Law, § 265.00, subd 15). Hence, the weapons themselves were an integral part of that case.

to Jones the court noted (p 261) that: "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been the victim of a search or seizure, *one against whom the search was directed,* as distinguished from one who claims prejudice only through the use of the evidence gathered as a consequence of a search or seizure directed at someone else" (emphasis supplied). In granting broad sweep to the concept of standing, the court reasoned that it was the general rule that a defendant, in order to establish his right to a suppression of evidence, was required to claim ownership or possession of the property seized or to show a substantial possessory interest in the property searched. In cases of possessory crimes the defendant, in order to show standing, was required to assert and prove facts which would tend to establish his guilt and, indeed, might be sufficient to convict him. In *Simmons v United States* (390 US 377), the reason for the rule of automatic standing was substantially undercut. Simmons, Garrett and Andrews were charged with bank robbery. In connection therewith two FBI agents searched the house of Andrews' mother and found a suitcase containing a gun holster, a sack similar to one used in the robbery, and several coin cards and bill wrappers from the bank which had been robbed. Garrett moved to suppress the suitcase and its contents. In order to establish standing Garrett testified that the suitcase was similar to one owned by him and that he was the owner of clothing found in the suitcase. His motion was denied and, upon the trial, his testimony at the suppression hearing was admitted against him, resulting in his conviction. The Supreme Court reversed, noting that (pp 392-393): "It seems obvious that a defendant who knows that his testimony may be admissible against him at trial will sometimes be deterred from presenting the testimonial proof of standing necessary to assert a Fourth Amendment claim. The likelihood of inhibition is greatest when the testimony is known to be admissible regardless of the outcome of the motion to suppress". "Thus, in this case Garrett was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection" *(Simmons, supra,* p 394). Despite the holding in *Simmons* the rule of automatic standing persisted although in limited form *(Brown v United States,* 411 US 223, *supra; Alderman v United States,* 394 US 165; see, generally, Ringel, Searches and Seizures, Arrests and Confessions [2nd ed], § 20.3[c]). In *Brown,* the petitioners were convicted of transporting stolen goods in interstate commerce. Brown was the manager of a warehouse in Cincinnati, which was owned by a wholesaler in clothing and household goods. Pilferage from the warehouse approximated $60,000 per year. Investigation disclosed that Brown and one Smith, a truckdriver for the wholesaler, removed the merchandise and stored it in the warehouse of one Knuckles. A search made under authority of a warrant, disclosed that over $100,000 of the wholesaler's property was stored in Knuckles' warehouse. Knuckles, Brown and Smith all moved to suppress the property seized. Knuckles' motion was granted upon the ground that the search warrant was defective. As to Brown and Smith the motion was denied bottomed upon their lack of standing. While expressly reserving the question of whether the holding in *Simmons* made unnecessary the doctrine of automatic stand-

ing laid down in *Jones* it noted that the charge was not possessory in nature and, hence, *Jones* did not apply. The ruling in *Alderman* was somewhat broader in nature. There the evidence sought to be suppressed was the fruit of an illegal wiretap. The motion was granted to the extent only of suppressing conversations in which the accused himself participated and all conversations which took place on the premises of the accused regardless of whether or not he participated in them. However, the court permitted introduction of these conversations against a codefendant or coconspirator, asserting (p 174) that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted". The reasoning upon which the decision was based is particularly illuminating. "The deterrent values of preventing the incrimination of those whose rights the police have violated have been considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed. We adhere to that judgment. But we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth" *(Alderman v United States, supra,* pp 174-175). Inasmuch as the doctrine of automatic standing was deemed one of constitutional dimension our Court of Appeals adopted it, by a sharply divided court, in *People v Hansen* (38 NY2d 17). In doing so, however, it noted (pp 22-23) that "the Supreme Court may be said to have indicated some receptivity, in light of its later decision in *Simmons v United States* [390 US 377] to reconsideration of its 'automatic standing' decision in *Jones (Brown v United States, supra,* pp 227-228)." The "receptivity" noted in *Hansen* was realized in *Rakas v Illinois* (439 US 128). The issue there presented was a narrow one. However, the court elected to treat it in the broadest terms. In so doing, it virtually eliminated the doctrine of automatic standing. Petitioners in that case were convicted of armed robbery. At the time of their apprehension they were passengers in an automobile in which was found a sawed-off rifle and rifle shells. The petitioners conceded that they did not own the automobile; additionally they asserted no interest in the rifle or shells. Their motion to suppress was denied for lack of standing, a determination affirmed by the Illinois courts and by the United States Supreme Court. In discussing the broad scope of the phraseology of *Jones* the Supreme Court indicated that the language there used—"one against whom the search was directed"—was intended to be "a parenthetical equivalent of the previous phrase 'a victim of the search or seizure.' To the extent that the language might be read more broadly, it is dictum which was impliedly repudiated in *Alderman v. Unted States* [394 US 165] and which we now expressly reject" *(Rakas v Illinois, supra,* p 135). While noting the distinction between an automobile and a dwelling the court went on to point out (p 148) that "petitioners' claim is one which would fail even in an analogous situation in a dwelling place, since they made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers". In light of the somewhat ambivalent adoption in *Hansen* of the "automatic standing" rule, *Rakas* is a portent of its demise in this State. The reasoning in *Rakas* is singularly appropriate to the case at bar. Here, giving Buckley the best conceivable interpretation of the facts, he was a "visitor". More probably, he was a trespasser. There is no showing that he had any interest, possessory or proprietary, in the safe. Certainly, he had no such interest in the van. The record does not disclose

whether the search of the safe and van was a consensual one. Nonetheless, it was Stone, not Buckley, who was the victim thereof. There is no basis, therefore, for a holding that Buckley had a reasonable or "legitimate expectation of privacy" either in the safe or in the van which was violated by the search. Accordingly, and in these circumstances, Buckley had no standing to move to suppress.