OPINION OF THE COURT
Budd G. Goodman, J.
The defendant has been indicted for the crimes of criminal possession of a controlled substance in the first and fifth degrees (Penal Law, §§ 220.21, 220.09), criminally possessing a hypodermic instrument (Penal Law, § 220.45), criminally using drug paraphernalia in the second degree (Penal Law, § 220.50), unlawful possession of marihuana (Penal Law, § 221.05), two counts of criminal possession of a weapon in the third degree (Penal Law, § 265.02), and three counts of criminal possession of a weapon in the fourth degree (Penal Law, § 265.01). He *135 now moves, pursuant to CPL 710.20, to suppress the guns and narcotics seized at the time of his arrest.
On June 23 and 24, 1980, this court conducted a pretrial hearing at which William Ainsberg and Police Officers Paul Zibrosky and James Albert testified for the People, and Frank Wilcox testified for the defense. The testimony at the hearing established the following facts:
While on patrol during June, 1979, Police Officer Zibrosky had observed several persons enter and exit an apparently abandoned apartment building located at 364 West 116th Street in Manhattan. On or about June 12, 1979, an unidentified man informed the officer that he had been inside said building, that gasoline was present therein, and that guns and narcotics were present in the right rear apartment on the first floor and in the left apartment on the fourth floor. Shortly thereafter, from a neighboring building, Officer Zibrosky personally observed persons inside the left rear apartment on the fourth floor. He then told his commanding officer about the suspected narcotics activity in 364 West 116th Street and was ordered to continue his surveillance. During the following week, Officer Zibrosky observed a man standing in front of said building and speaking to each of the numerous persons who entered the building. The officer noted that some of these individuals arrived in automobiles bearing out-of-State license plates. Many of the persons were underweight and had swollen hands.
Officer Zibrosky consulted William Ainsberg, a senior real estate manager of the New York City Department of Real Estate, who verified that the building at 364 West 116th Street had officially been abandoned and ownership had vested in New York City after an in rem proceeding. The officer also consulted Sergeant Collins, an attorney with the police department’s legal division, who advised him that a warrant was not needed to arrest trespassers inside a city-owned abandoned building. Thus, neither an arrest nor a search warrant was ever obtained.
On June 27, 1979, Officer Zibrosky and 24 other persons from the Manhattan North Task Force, the police department’s emergency services unit and the fire department, *136 entered and secured the building at 364 West 116th Street. Officer Zibrosky along with two fellow officers knocked on the door of the rear left apartment on the fourth floor. As the door was being unlocked, the officers shoved it open and thereby knocked down the man who had unlocked the door, one Joseph Shamberger. After Officer Zibrosky shouted, “Police. Don’t move”, he noticed the defendant proceed into the bathroom. There, Officer Zibrosky apprehended the defendant as he tossed down an airshaft what appeared to be a gun. The police subsequently recovered a shotgun, a handgun and narcotics in the airshaft, as well as a shotgun and two handguns in the bathroom and narcotics, drug paraphernalia and ammunition .in the room adjoining the bathroom. Frank Wilcox and Mr. Shamberger were arrested along with the defendant on charges of criminal possession of narcotics and weapons and criminal trespass. All charges against the first two men were dismissed, while the defendant was indicted for the crimes delineated above.
According to Mr. Wilcox’ testimony, the apartment, in which the defendant was arrested, was then maintained as a residence by a recently deceased man who was known only as “T. Bone”. Said apartment was apparently livable, in that furnishings, kitchen utensils, a television set and a stereo were present therein and electrical service had not yet been discontinued. Mr. Wilcox had a key to the apartment’s front door and was its caretaker; he was paid money and drugs by “T. Bone” for this service. Mr. Wilcox further testified that the defendant had come to said apartment on June 27, 1979, in order to talk to Mr. Wilcox. Neither the defendant, Mr. Wilcox nor Mr. Shamberger resided in said apartment or had any possessory interest therein. Furthermore, the defendant did not establish or even assert any interest whatsoever in the property seized.
The defendant has moved to suppress the guns, narcotics and various paraphernalia on the ground that the warrant-less search and seizure violated his rights under the Fourth Amendment. The People argue that the defendant’s Fourth Amendment rights were not violated because the defendant did not have a reasonable expectation of privacy in the area searched.
On June 22,1980, this court ruled that the defendant *137 had standing to contest the legality of the search and seizure, relying upon the “automatic standing” doctrine of Jones v United, States (362 US 257), that a defendant has “automatic standing” to challenge the legality of a search and seizure where possession of the items seized is an essential element of the crime charged. After the hearing on the motion to supress had commenced, the United States Supreme Court overruled the “automatic standing” rule of Jones v United States (supra),[1] the court made clear that a separate and specific inquiry into a defendant’s standing to contest an allegedly illegal search had been abandoned by that court.[2] (United States v Salvucci, 448 US 83, —, n 4, 100 S Ct 2547, 2551, n 4; Rawlings v Kentucky, 448 US 98.) Because Fourth Amendment rights are personal rights, the question is whether the challenged search or seizure violated the rights of the defendant who now seeks to exclude the evidence obtained during it. (Rakas v Illinois, 439 US 128, 138, 140, supra; see Simmons v United States, 390 US 377, 389.) Thus the proper inquiry focuses directly on the substance of the defendant’s claim that he had a legitimate expectation of privacy in the area searched. (Rawlings v Kentucky, supra, p —, 2560; Rakas v Illinois, supra, p 139.)[3]
*138 According to the defendant’s own witness at the suppression hearing, the defendant herein was merely the casual guest of an employee (or a guest, if Mr. Wilcox was not then working) of a squatter in a city-owned, abandoned building. As a casual guest, the defendant did not have any expectation of privacy in the apartment which was reasonable or legitimate. (See Rakas v Illinois, 439 US 128, 133, 148, supra.) This conclusion is manifest where the apartment was city-owned and illegally occupied by a squatter. Thus, both the occupant and the defendent were trespassers under the Penal Law (§ 140.10) and were wrongfully on the premises at the time of the search and seizure; in such posture, the defendant cannot claim a violation of his Fourth Amendment rights. (Rakas v Illinois, supra, p 141; Jones v United States, 362 US 257, 259, 267, supra.)[4] Because the defendant has not met his burden of proving that he had a reasonable expectation of privacy in the apartment, his Fourth Amendment rights were not violated by the search of said apartment and the seizure of contraband therein. (See Rawlings v Kentucky, 448 US 98, —, 100 S Ct 2556, 2561-2562, supra.) Furthermore, the defendant’s rights were not violated by the search and seizure in the airshaft which, as a common area of the apartment building, is not a place in which even a legal tenant could have had a reasonable expectation of privacy. (See United States *139 v Moore, 463 F Supp 1266, 1270; see also, United States v Wilkes, 451 F2d 938, 941; United States v Miguel, 340 F2d 812, 814, cert den 382 US 859, reh den 382 US 922.)
For the above reasons, the court holds that the defendant’s Fourth Amendment rights were not violated and his motion to suppress is therefore, in all respects, denied.[5]

. Previously in Rakas v Illinois (439 US 128, 142, reh den 439 US 1122), the Supreme Court rejected as too broad the second rule of Jones v United States (362 US 257, 267, supra), that “anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to supress”. Although legitimate presence on the premises is relevant to one’s expectation of privacy, it is but one factor thereto and cannot be deemed controlling. (Rakas v Illinois, supra, p 148.)

. The New York Court of Appeals, relying in part upon subsequently modified decisions of the United States Supreme Court, has concluded that a defendant has standing when he or she (1) is the owner or possessor of the seized property, (2) has a possessory interest in the searched premises, (3) is legitimately on the premises when the search occurs, or (4) comes within the “automatic standing” rule. (People v Hansen, 38 NY2d 17, 22.) The court, with Judge Gabrielli dissenting, declined to reconsider the “automatic standing” doctrine prior to such action by the Supreme Court. (38 NY2d, at p 23; see People v Buckley, 74 AD2d 757.) Judge Jones, writing for a majority of four, noted that the Code of Pre-Arraignment Procedure (§ SS290.1, subd [5], par [f]) adopted by the American Law Institute (1975) incorporated the “automatic standing” doctrine. (38 NY2d, at p 23.) Thus, New York may not follow the Supreme Court’s lead in abandoning this doctrine.

. In People v Hansen (38 NY2d 17, 23, supra), the Court of Appeals *138 granted automatic standing to the defendant and suppressed contraband seized pursuant to an invalid search warrant, without having specifically addressed the defendant’s reasonable expectation of privacy in the vehicle searched. (Cf. id., at p 27 [dissenting opinion, Gabrielli, J.].) In the present case, this court utilizes the latest Fourth Amendment analysis mandated by the Supreme Court and therefore examines the reasonableness of the defendant’s expectation of privacy, which is antecedent to determining “whether applicable cause and warrant requirements have been properly observed.” (See Rawlings v Kentucky, 448 US 98, —, 100 Ct 2556, 2565, supra [concurring opn, Blackmun, J.].)

. This court need not determine whether or not a squatter residing in a city-owned abandoned building would have a legitimate expectation of privacy in the premises. Although trespassing and therefore wrongfully on the premises (see Rakas v Illinois, 439 US 128, 141, supra); this State has recognized that a squatter may be lawfully evicted only after at least a summary proceeding and, possibly, a trial. (Real Property Actions and Proceedings Law, § 713, subd 3; § 745.) Thus, a squatter, under New York law, may have some expectation of privacy in the occupied premises which is recognized as legitimate. (Cf. People v Stadtmore, 52 AD2d 853, 854.)

. Because the court has denied the defendant’s motion, the People’s alternative ground in support of the legality of the search and seizure, to wit, that agents of New York City, as the landlord, consented to the search of the premises, has not been considered.