OPINION OF THE COURT
Alfred H. Kleiman, J.
The defendant stands accused of the crime of burglary in the second degree in that on or about February 23, 1980 he knowingly entered and remained unlawfully in the dwelling of another with intent to commit the crime of larceny therein.
The defendant moved to suppress statements of the defendant and physical evidence seized from the defendant and from an alleged accomplice. A hearing was held on August 18, 19, and 27, 1980 following which I orally made my findings of fact and conclusions of law. I held that the stopping, questioning, and seizure of the defendant and his accomplice were intrusions that went beyond the bounds set forth in People v De Bour (40 NY2d 210). Accordingly, the physical evidence seized from the defendant were sup *562 pressed, and pursuant to Dunaway v New York (442 US 200) the statements were also suppressed. The motion to .suppress the physical evidence seized from the alleged accomplice was denied upon the ground that the defendant had no standing to challenge.the legality of that search. ‘This opinion addresses itself more fully to the basis of this court’s conclusion of law as to the latter issue.
The findings of fact relevant to the issue dealt with in this opinion are as follows.
Two police officers observed the alleged accomplice, Otis McFall, near a telephone booth. They then observed the defendant emerge from a driveway, call to McFall and hand to McFall what appeared to be an electric cord and a handkerchief. The officers stopped the defendant and McFall and, in response to questioning, the handkerchief containing some money rolled up in it was produced by McFall. The officers subsequently learned that a nearby apartment had been broken into. The defendants were arrested, the cord and handkerchief were seized from McFall and a radio and cassette tapes were seized from the defendant Johnson. Defendant Johnson sought to suppress all the seized property including the handkerchief, money and the cord taken from McFall upon the grounds his (Johnson’s) Fourth Amendment rights were violated.
The issue that this court found necessary to decide was whether the doctrine of “automatic standing” as articulated in People v Hansen (38 NY2d 17) has any continued viability in New York in view of the Supreme Court’s recent decision in United States v Salvucci (448 US 83). The court holds that it does not and, accordingly, that portion of defendant’s motion to suppress, dealing with property seized from McFall, was denied.
This court holds that the defendant lacks standing to object to the search of McFall based upon United States v Salvucci (supra), which abolished the “automatic standing” rule set forth in Jones v United States (362 US 257). Although the New York courts have applied the rule of “automatic standing” in similar circumstances (People v Hansen, supra; People v Waddy, 63 AD2d 492; People v Buckley, 74 AD2d 757), those cases were decided before the *563 steadily eroding principle articulated by the Supreme Court in Jones v United States (supra) vanished entirely in United States v Salvucci (supra).
In the seminal case on “automatic standing” Jones v United States (supra), the defendant challenged the legality of a search of an apartment in which he was merely a guest of the owner and in which drugs were found. The court identified two major reasons for according the defendant automatic standing. First, a defendant charged with a possessory offense might only be able to establish standing to challenge a search and seizure by giving self incriminating testimony, admissible at trial, as evidence of his guilt. (Jones v United States, supra, at p 262.) Second, the court wished to avoid the vice of prosecutorial self-contradiction whereby the government would assert that the defendant possessed the goods for purposes of criminal liability while simultaneously denying that he possessed them for the purposes of claiming the protections of the Fourth Amendment. (Jones v United States, supra, at p 263.) The first stated reason for the “automatic standing” rule was obviated when in Simmons v United States (390 US 377) the Supreme Court decided that such admission could no longer be used against the defendant at trial. The eroding effect of Simmons upon the “automatic standing” rule was recognized in Brown v United States (411 US 223). In that case, the defendants sought to suppress stolen goods seized pursuant to a search of a store in which defendants asserted no proprietary or possessory interest. The court noted (at p 228) that “it is not necessary for us now to determine whether our decision in Simmons, supra, makes Jones’ ‘automatic’ standing unnecessary” since possession of the evidence at the time of the contested search and seizure was not an essential element of the Government’s case. “The vice of allowing the Government to allege possession as part of the crime charged, and yet deny that there was possession sufficient for standing purposes, is not present.” (Brown v United States, supra, at p 229.)
In People v Hansen (supra, at p 22) the Court of Appeals recognized that Brown had not abandoned the doctrine of *564 “automatic standing” but may be said to have indicated “some receptivity * * * to reconsideration” of the doctrine. Nevertheless, the court “decline [d] the court’s invitation, if indeed it be that, in Brown” to depart from the doctrine (People v Hansen, supra, at p 23). The court did accord “automatic” standing to the defendant charged with possessing and using drug paraphernalia and found that possession of the goods at the time of the seizure “might be an essential element of one or more of the offenses charged in the indictment” (People v Hansen, supra, at p 23).
In Rakas v Illinois (439 US 128) the Supreme Court made further inroads into the rationale underlying the “automtaic standing” rule when it stated that a prosecutor may simultaneously maintain that a defendant criminally possessed the seized goods, but was not subject to a Fourth Amendment deprivation, without legal contradiction. The second reason for the “automatic standing” rule enunciated in Jones (supra, at p 263), was, therefore, also obviated. The court held that an illegal search only violates the rights of those who have a “legitimate expectation of privacy in the invaded place.” (Rakas v Illinois, supra, at p 143.) It could be argued that the issue of “automatic standing” was not directly before the court in Rakas, in that possession of the rifle and shells at the time of the seizure was not an essential element of the Government’s robbery case against the defendant.
Even though the language in the Rakas decision called into serious question the continued viability of the “automatic standing” rule, the doctrine as set forth in Hansen, was again applied in New York in People v Buckley (supra), where the defendants were charged with possession of weapons, but not without some reservations by the First Department. “We think that it is for the Court of Appeals, not this court, to determine whether the Rakas opinion effectively overturns the doctrine it explicitly reaffirmed in Hansen (supra)” (People v Buckley, supra, at p 758). The court rejected the finding of the lower court that since the charges in the indictment were based upon the testimony of the victims that the defendants brandished guns during the course of the robbery, and not upon pos *565 session at the time of the seizure, Hansen was inapplicable. “On this record we cannot exclude the possibility that the guns seized were an essential element at least of the possession charges in the indictment * * *. The operability of the displayed guns is clearly an essential element of the possession counts.” (People v Buckley, supra, at p 758.) A not necessarily inconsistent position was taken in People v Cyrus (76 AD2d 842) where the court cited Brown v United States (supra) to deny standing to a defendant, charged with robbery, where the goods were seized from his codefendant on the day after the victim was robbed at knifepoint. Apparently, the recovery of the proceeds of the robbery was helpful but not essential to the People in the Cyrus case.
Not until United States v Salvucci (supra), however, was the greatly weakened “automatic standing” rule flatly overruled. The court held that “defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated” (United States v Salvucci, supra, at p —, 2549; emphasis supplied). In that case, the defendants were charged with possession of stolen mail. The 12 checks in question had been seized by the Massachusetts police during the search of an apartment rented by defendant Zackular’s mother. In tracing the history of the “automatic standing” rule since Jones the court noted that the rationale behind the rule had disappeared in light of the decisions of Rakas and Simmons and that, “We are convinced that the automatic standing rule of Jones has outlived its usefulness in this Court’s Fourth Amendment jurisprudence.” (United States v Salvucci, supra, at p —, 2554.) The case was remanded to give defendants an opportunity to demonstrate that they had a “legitimate expectation of privacy” in the areas of defendant Zackular’s mother’s home where the goods were seized.
If this court followed the Hansen decision, it is clear that suppression of the property seized from McFall would have to be granted. The doctrine of “automatic standing” would apply to the facts of this case because possession of the handkerchief at the time seizure is an essential element *566 of the People’s case. The handkerchief and the radio, etc., belonging to the complainant are virtually the only evidence which places the defendant inside the burglarized apartment. It is the opinion of this court that since the Hansen case was based solely on Jones v United States (supra), now overruled, United States v Salvucci (supra) is also the law of New York. Nothing in the Hansen case indicates that the Court of Appeals would follow a more lenient standard than the Supreme Court in affording standing to a defendant.* As stated in Rakas v Illinois (supra, at p 137), “Each time the exclusionary rule is applied it exacts a substantial social cost for the vindication of Fourth Amendment rights. Relevant and reliable evidence is kept from the trier of fact and the search for truth at trial is deflected.” Salvucci has therefore intentionally narrowed the class of persons who may invoke the exclusionary rule.
Accordingly, the new test to be applied in New York is whether or not the defendant had a legitimate expectation of privacy so that his own Fourth Amendment rights were violated by the search. Defendant has failed to meet this test. The court holds that defendant Johnson’s Fourth Amendment rights were not violated by the search of McFall. The defendant did not allege any actual or constructive possessory interest in the goods seized after he had turned them over to McFall.
The defendant’s motion to suppress the property seized from McFall was therefore denied.

 It should be noted that subsequent to this court’s decision, the Appellate Division granted a motion to reargue People v Buckley (supra) in the light of United States v Salvucci (supra). (People v Buckley, 74 AD2d 757.)